UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NANJING DONGSHENG SHELF MANUFACTURING CO., LTD. )<br><br>Plaintiff, )<br><br>v )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>COALITION FOR FAIR RACK IMPORTS )<br>Defendant-Intervenor. ) | **PUBLIC VERSION**<br>Court No. 24-00085 |

**PLAINTIFF'S RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
J. Kevin Horgan
**deKieffer & Horgan, PLLC**
Suite 1101
1156 15th St., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: October 25, 2024

# TABLE OF CONTENTS

I.     RULE 56.2 STATEMENT ...................................................................................... 1

    A.     Administrative Determination Subject to Appeal ......................................... 1

    B.     Issues Presented ................................................................................................ 1

II.    STANDARDS OF REVIEW ................................................................................... 2

III.   STATEMENT OF THE FACTS ............................................................................. 4

    ARGUMENT .............................................................................................................. 8

IV.    The Department Abused its Agency Discretion in Rejecting Dongsheng's SRC
    and Section A Questionnaire Response .................................................................. 8

    A.     The Department Abused its Discretion ........................................................... 8

    B.     Department Acted Arbitrarily Considering its Own History of Late Filings
           and Accepting Late Filings ............................................................................ 16

    C.     The Department's Determination Not to Select Dongsheng, as the Largest
           Exporter, as a Mandatory Respondent and Rely on Dongsheng's Timely
           Section A is Contrary to Law ........................................................................ 18

IV.    Department had No Basis to Resort to AFA .......................................................... 21

V.     Conclusion and Prayer for Relief ........................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532 (1970) ................................................2

*Allied Pac. Food (Dalian) Co. v. United States*, 435 F. Supp. 2d 1295, 1313-14 (2006) ..............3

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) ...............................2

*Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361 (April 2020)..............................................24

*Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (September 23, 2019)..........................14

*Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369, 1378 (Ct. Int'l Trade *2024)....... passim*

*Celik Halat ve Tel Sanayi A.S. v. United States, 557 F. Supp. 3d 1348 (February 15, 2022).......10*

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States, 701 F.3d 1367 (Fed. Cir. 2012)* ..................................................................................................................................24

*Citic Trading Co. v. United States*, 27 C.I.T. 356, 366 (Ct. Int'l Trade 2003).............................2

*Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003) ...........................4, 9

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938).......................................2

*Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) .............2

*Diversified Products Corp. v. United States*, 572 F. Supp. 883, 888 (1983) ...............................2

*Dongbu Steel Co., Ltd. v. US*, 635 F. 3d 1363 (Fed. Cir. 2011). ...................................................20

*Dorbest Ltd. et al. v. United States*, 462 F. Supp. 2d 1262, 1268 (CIT 2006)...............................3

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) ...............................................24

*Ferrostaal Metals GmbH v. United States*, 518 F. Supp. 3d 1357, 1371-72 (Ct. Int'l Trade 2021) ..................................................................................................................................10

*Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) ..................................................................................................................................14

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319  (Fed. Cir. 2010).......................24

*Grobest & I-Mei Industrial (Vietnam) Co., Ltd. v. United States*, 815 F. Supp.2d 1342 (Ct. Int'l Trade 2012) ..................................................................................................... 9-11

*Grupo Acerero S.A. de C.V. v. United States*, 698 F. Supp. 3d 1320, 1332 (Ct. Int'l Trade 2024) ................................................................................................................................10

*Guandong Chemicals Imp. & Exp. Corp. v. United States*, 460 F. Supp. 2d 1365 (CIT 2006) ......................................................................................................................................3

*Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339, 1349-50 (Ct. Int'l Trade 2024) ..........10

*Mueller Comercial De Mexico v. United States*, 753 F.3d 1227 (Fed. Cir. 2014) ......................24

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)............4, 16

*Nippon Steel Corp. & United States*, 337 F.3d 1373 (Fed. Cir. 2003) .........................................22

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995)......................................9, 14

*Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (February 18, 2021) ................................................................................................................................14

*SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001)....................................4, 16

*Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021)......................................................23

*Timken U.S. Corp. v. United States*, 4343 F.3d 1345 (Fed. Cir. 2006) .......................................14

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).......................................................2

*Usinor Sacilor v. United States*, 872 F. Supp. 1000 (Ct. Int'l Trade 1994).................................12

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ............24

19 U.S.C. § 1516a(b)(1)(B)(i)..........................................................................................................2

19 U.S.C. § 1516a(b)(l)(A) .............................................................................................................4

19 U.S.C. 1677f-1(c)(2) ................................................................................................................20

19 U.S.C. § 1677e(a)(2) ...........................................................................................................21-22

19 U.S.C. 1677m(a)(1)(A) .............................................................................................................25

19 CFR 351.302(c)............................................................................................................................8

## ADMINISTRATIVE DECISIONS

*Cast Iron Soil Pipe From the People's Republic of China: Initiation of Less Than-Fair Value Investigation*, 83 Fed. Reg. 8053 (February 23, 2018).........................................................20

*Circular Welded Carbon-Quality Steel Pipe from India: Preliminary Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 32,562 (June 1, 2012)............................................17

*Large Residential Washers From Mexico: Final Results of Antidumping Duty Administrative Review; 2016-2017*, 83 Fed. Reg. 11963 (March 19, 2018) ...............................16

*New Pneumatic Off-the-Road Tires from the People's Republic of* China: *Preliminary Results of Countervailing Duty Administrative Review,* 75 Fed. Reg. 64,268 (Oct. 19, 2010),.......................................................................................................................................16

*Stainless Steel Bar from India: Final Results of Antidumping Duty Administrative Review*, 74 Fed. Reg. 47,198 (Sept. 15, 2009), ........................................................................................16

## OTHER AUTHORITIES

Procrustean, Dictionary; https://www.vocabulary.com/dictionary/Procrustean (last accessed 2/7/2023 ....................................................................................................................................23

## I. RULE 56.2 STATEMENT

Pursuant to Rule 56.2 (c)(1), Nanjing Dongsheng Shelf Manufacturing Co., Ltd., ("Dongsheng" or "Plaintiff"), hereby states the administrative decision subject to appeal and the issues of law presented:

### A. Administrative Determinations Subject to Appeal

The U.S. Department of Commerce (the "Department") published the contested final results in the Federal Register on April 10, 2024. *Certain Steel Racks and Parts Thereof From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022*, 89 Fed. Reg. 25,235 (April 10, 2024), **PR263**, *incorporating* Issues and Decision Memorandum ("IDM")*,* **PR262**. Dongsheng was assigned a margin of 144.50% *ad valorem* in the Final Results.

### B. Issues Presented

1. <u>Issue One</u>: Whether the Department's rejection of Donsheng's SRC and Section A questionnaire response was an abuse of discretion and contrary to law?

2. <u>Issue Two</u>: Whether the Department's decision not to select Dongsheng as mandatory respondent is contrary to law?

3. <u>Issue Three</u>: Whether the Department's application of AFA and decision not to assign Dongsheng its own rate or a separate rate as contrary to law and otherwise unsupported by substantial evidence.

## II.    STANDARDS OF REVIEW

This Court "shall hold unlawful any determination . . . found . . . to be unsupported by substantial evidence on the record or otherwise not in accordance with law."[1]  Different standards of review are applicable to the issues in this case.

### A.  Substantial Evidence Standard for Non-Market Economy Cases

"[S]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  Furthermore, "substantial evidence" must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence."[3]  Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [its] view.'"[4]

In cases involving non-market-economy ("NME") countries, although "the standard of review precludes the court from determining whether Department's choice of surrogate value was the best available on an absolute scale, the court may determine the reasonableness of Commerce's selection of surrogate prices."[5]  While the statute "'grants to Commerce broad discretion to determine the 'best available information' in a reasonable manner on a case-by-case basis.' . . . [t]his discretion . . . is constrained by the underlying objective of [19 U.S.C. §

---

[1] 19 U.S.C. § 1516a(b)(1)(B)(i).
[2] *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938)).
[3] *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).
[4] *Diversified Products Corp. v. United States*, 572 F. Supp. 883, 888 (1983) (*quoting Universal Camera*, 340 U.S. at 488).
[5] *Citic Trading Co. v. United States*, 27 C.I.T. 356, 366 (Ct. Int'l Trade 2003).

1677b(c)]; to obtain the most accurate dumping margins possible.[6] "'This objective is achieved only when Commerce's choice of what constitutes the best available information evidences a rational and reasonable relationship to the factor of production it represents.'"[7]

The courts have elaborated on the meaning of "best available" in the NME normal value statute. The *Dorbest* court wrote a seminal opinion summarizing the law:

> The term "best available" is one of comparison, i.e., the statute requires Commerce to select, from the information before it the best data for calculating an accurate dumping margin. The term "best" means "excelling all others." II Oxford English Dictionary 139 (2d 1989); Webster's II new Riverside University Dictionary 168 (1988) ("{e}xceeding all others in excellence, achievement, or quality").

*Dorbest Ltd. et al. v. United States*, 462 F. Supp. 2d 1262, 1268 (CIT 2006) *citing Guandong Chemicals Imp. & Exp. Corp. v. United States*, 460 F. Supp. 2d 1365 (CIT 2006). The *Dorbest* Court thus concluded that "{o}n factual issues, the court's role 'is not to evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information.'" *Dorbest* at 1269 (citations omitted).

According to *Dorbest*, "Commerce needs to justify its selection of data with a reasoned explanation." *Dorbest* at 1269 (citation omitted). The *Dorbest* Court further cautioned that "{i}n doing so, Commerce must 'conduct a fair comparison of the data sets on the record' with regard to its announced method or criteria." *Id.*, citing *Allied Pac. Food (Dalian) Co. v. United States*, 435 F. Supp. 2d 1295, 1313-14 (2006). Finally, *Dorbest* warned: "Commerce's findings or conclusions rendered in equations or numeric form are not beyond scrutiny." *Id.*

---

[6] *Id. at* 365, n.12 (citations omitted).
[7] *Id.* (citations omitted).

### B. Arbitrary & Capricious Standard

This Court will hold as unlawful any administrative decision that is arbitrary, capricious, or an abuse of discretion. *See* 19 U.S.C. § 1516a(b)(l)(A). Normally, an agency decision would be arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Moreover, Commerce acts arbitrarily and capriciously when it "consistently follow[s] a contrary practice in similar circumstances and provide[s] no reasonable explanation for the change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003). It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (alteration, quotation marks and citation omitted). Thus, when the administering agency's actions are internally inconsistent and self-contradictory, and the agency treats similarly situated parties differently or fails to consider an important aspect of a problem, the agency's decisions are arbitrary and capricious and subject to reversal.

## III. STATEMENT OF FACTS

On September 26, 2022, Dongsheng requested review of its sales and the Department initiated upon Dognsheng. **PR6**. On November 16, 2022, the Department placed CBP data on the record for respondent selection purposes. **CR1 PR18**. Based on this data, Dongsheng would have been selected as a mandatory respondent as one of the largest exporters of subject

merchandise. On November 23, 2022, Dongsheng filed comments on the CBP data, pointing out that the data was incomplete. **CR3 PR22**. On December 9, 2022, the Department placed corrected CBP data on the record which also implicated Dongsheng would be selected as a mandatory respondent. **CR8 PR42**.

Thirty days after initiation, December 5, 2022, is the deadline for parties to file a separate rate application ("SRA"), separate rate certification ("SRC"), or no sales certification in the review. On December 2, 2022, the Department granted a short extension of the deadline for numerous parties to file SRA/SRC/No Sales to December 12, 2022. **PR36**. The Department, particularly at the time, had a common practice with SRA/SRC/No Sales deadlines to extend the deadline for all parties. Accordingly, Counsel to Dongsheng believed at the time that the deadline for all parties to file SRA/SRC/No Sales was extended to December 12, 2022, and calendared it accordingly.

On December 12, 2022, Dongsheng filed its SRC, just as many other parties did. **CR24 PR45**. On January 17, 2023, the Department rejected Dongsheng's SRC as untimely. **PR62**. It was only at this time that Counsel to Dongsheng become aware of the deadline discrepancy and that the Department had departed from its common practice of extending multiparty deadlines, such as SRCs, for all parties rather than only for those that explicitly requested the extension.

On January 23, 2023, the Department declined to select Dongsheng as a mandatory respondent, even though it was the largest exporter of subject merchandise, because Dongsheng did not timely file its SRC. Instead, the Department selected Ningbo Xinguang Rack Co., Ltd. and Suntop (Xiamen) Display System Inc. as mandatory respondents. **CR28 PR64**. Notably, both of these companies had filed their SRCs *on the same day as* Dongsheng, i.e., December 12. **PR48 PR44**.

On January 24, 2023, Dongsheng filed a letter requesting that the Department accept Dongsheng's SRC and/or select Dongsheng as a mandatory respondent.  **CR29 PR74**. Dongsheng explained the circumstances that led to the filing seven days later than the initial deadline, including numerous examples of the Department extending such a deadline for all parties.  Dongsheng also submitted that the Department should accept the filing based on CIT precedent in determining whether it was improper to reject untimely filings, raising among the issues that the burden on the Department to consider the small form filing SRC made at the same time as other parties was nonexistent while in contrast the harm was enormous to Dongsheng if the filing was not accepted or Dongsheng was not selected as a mandatory respondent or subject to AFA.

On February 13, 2023, at Dongsheng's request, the Department held a meeting with Dongsheng to discuss rejection of the SRC and the Department's decision not to select Dongsheng as a mandatory respondent.

On February 15, 2024, Dongsheng timely filed a voluntarily Section A questionnaire, again requesting that the Department either select Dongsheng as a mandatory respondent or alternatively as a voluntary respondent.  **CR34 PR91**.  Notably, on February 3, 2023, one of the mandatory respondents, Suntop, had filed a letter requesting that the Department rescind the review for them as their products were actually outside of the scope.  **PR85**.

Dongsheng's timely submitted Section A questionnaire response contained the full separate rate application information, such that the SRC information would not be needed. Indeed, even if an applicant files an SRC or SRA, the "mandatory respondents are required to file full Section A questionnaire responses, including all separate rate information, and cannot refer to or substitute information or supporting documentation submitted in a separate rate

application." *See* China SRA Instructions. The SRC also contains the same requirement that a mandatory respondent must respond to the Department's questionnaire to retain separateness. China SRC at 2. The Department would not have relied upon the information in Dongsheng's SRC, but instead would have relied upon and required a full response to the Section A questionnaire response for this specific information—which Dongsheng did timely provide on February 15, 2023. The Department later rejected this voluntary Section A filing many months later on August 18, 2023. **PR177**.

Despite these requests, on March 2, 2023, the Department denied Dongsheng's request to reconsider the rejection of its SRC. **PR108**. On September 15, 2023, Dongsheng filed comments for the Department' consideration in the preliminary results, requesting again that the Department reconsider its decision or at a minimum, assign Dongsheng a separate rate. **PR213**. In the Preliminary Results, the Department considered Dongsheng part of the PRC-entity due to the late filed SRC and assigned Dongsheng a punitive high 144.50 percent rate on entries for this review. In the prior reviews, Dongsheng had rates between 9.99-13.88 percent.

Dongsheng timely submitted a case brief arguing again that the Department should accept the untimely SRC or accept the timely filed Section A for this purpose, and either select Dongsheng as a mandatory respondent or calculate a separate rate for Dongsheng. Dongsheng also raised these arguments at a hearing on February 22, 2024. Nonetheless, the Department made no changes with respect to Dongsheng in the Final Results.

**ARGUMENT**

**IV. The Department Abused its Agency Discretion in Rejecting Dongsheng's SRC and Section A Questionnaire Response.**

**A. The Department Abused its Discretion.**

The Department found that the circumstances around Dongsheng's late filing did not meet the requirement of "an extraordinary circumstance" under 19 CFR 351.302(c) and did not accept Dongsheng's SRC out of time. Final IDM at nt 124. As an initial matter, we also address the Department's assertion that "Dongsheng never requested an extension of the deadline to file its SRC after the fact." *Id*. at 24. This is not supported by the record and is a game at semantics that must be rejected. On January 25, 2023, Dongsheng filed a request that the Department should accept Dongsheng's SRC out of time. This was clearly a request for an extension out of time. Dongsheng also held a meeting to discuss accepting Dongsheng's SRC, where this was understood. The Department's letter rejecting Dongsheng's request also discusses 19 CFR 351.302(c) and Dongsheng's request to accept the filing under extraordinary circumstances, which is the requirement in the regulation to file an extension out of time. Dongsheng's letters, meeting, preliminary comments, and case brief were an extension request out of time, as well as other argumentation on how the Department should accept the filing or its Section A.

Nonetheless, the Department still also found that Dongsheng's extension request to accept its SRC out of time did not meet the very strict definition of extraordinary circumstances. Final IDM at nt 124. Further, even if the Court agrees that multiple requests to accept a late filing with discussion of the statute on requesting an extension out of time does not constitute an extension request out of time, this requirement, the extraordinary circumstances requirement, and the SRC deadline are not statutory deadlines. A deadline in a regulation that "is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so

8

would amount to an abuse of discretion." *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995). An abuse of discretion "occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted). The Department abused its discretion not to accept Dongsheng's SRC out of time because it failed to weigh the relevant factors of this case. *See also Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369, 1378 (Ct. Int'l Trade 2024) (Citing *Consol Bearings* and finding that the Department's rejection of an untimely submission "was unreasonable and unsupported by substantial evidence, constituting an abuse of discretion.").

*Grobest* is a foundational case discussing the rejection of untimely finding and the need to "review on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on the Department and the interest in finality." *See Grobest & I-Mei Industrial (Vietnam) Co., Ltd. v. United States*, 815 F. Supp.2d 1342, 1365 (Ct. Int'l Trade 2012). In *Grobest*, the respondent filed its separate rates certification 95 days late. There, the court held that the interest of fairness outweighed the burden placed on the Department, relying primarily on three facts: (1) the burden of reviewing this particular type of submission is not great, (2) although untimely submitted, the submission was still made more than seven months before the preliminary determination, and (3) the exporter made every effort to correct the error as soon as it became aware of the omission. The court rightly concluded that the Department's rigid application of its deadline constituted an abuse of discretion.

The Department largely rejects the relevance of this case as the regulation was changed after this case. Final IDM at 29. However, this holding and weighing of these factors continues

to be found relevant by the Courts, even after the 2013 addition of the "extraordinary circumstances" provision to the statue. *Grupo Acerero S.A. de C.V. v. United States*, 698 F. Supp. 3d 1320, 1332 (Ct. Int'l Trade 2024) (citing *Grobest* in its discussion of accepting untimely filings); *Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339, 1349-50 (Ct. Int'l Trade 2024) (citing *Grobest* in its discussion of accepting untimely filings); *Ferrostaal Metals GmbH v. United States*, 518 F. Supp. 3d 1357, 1371-72 (Ct. Int'l Trade 2021) (discussing *Grobest* in its discussion of accepting untimely filings).

Indeed, in *Celik Halat*, the Court, while acknowledging the Department's discretion in determining what constitutes, extraordinary circumstances, warned the Department from "impos[ing] a grossly disproportionate penalty for what essentially was a minor technical violation that had no discernible effect on the investigation. While Commerce has the authority to establish and enforce its own regulations, it is not free to apply its 'extraordinary circumstance' rule in so harsh a way as to produce an unjust and punitive result." *Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1348, 1361 (February 15, 2022). The Court found that the Department abused its discretion to "impose a draconian penalty upon plaintiff" and gave the Department only a limited period of time to "correct the serious, prejudicial consequences of its error.") *Id*. at 1362. The Department has imposed a Draconian penalty on Dongsheng that has removed any ability for it to export to the U.S. pending this litigation, as well as creating extreme potential liabilities for its importers.

The Department also oddly attempts to say the *Grobest* is different because the procedural burden in that case was different than this case, saying the "procedural burden at issue, here, stems from fairness" and then explaining that the Department was fair because Dongsheng had the notice of the SRC deadline and the opportunity to timely submit the SRC.

Final IDM at 29-30. Yet, *Grobest* also dealt with the late filing of an SRC where the respondent had notice and opportunity, but still the Court found the minimal burden on the Department to review the SRC was not "sufficient to outweigh the interests in fairness and accuracy." *Grobest*, 815 F. Supp. 2d at 1367. Thus, following *Grobest*, the Department certainly acted unfairly (as well as inaccurately, as discussed further below) when it rejected the same exact filing, and SRC, at an even earlier stage of the review than in *Grobest*. The Department's definition of fairness appears to be enforcing deadlines as a black and white rule no matter how unfair to respondents; but that is not supported by any of the caselaw discussed above.

Considering the *Grobest* factors, accepting Dongsheng's late filing of its SRC did not burden the Department, while the harm to Dongsheng of refusing to accept this SRC is extraordinary and penal. First, the Department was not deprived of its ability to investigate Dongsheng's separateness and therefore the Department was not burdened *at all* by this error. The late filing happened at the very beginning of this review segment—indeed only 30 days into a 545 day review. Dongsheng filed its SRC only one week *later than* the original Federal Register deadline and a full 172 days *before* the unextended preliminary results, which the Department did extend and thus it was filed 292 days *before* the extended preliminary results.

Second, Dongsheng filed the SRC at the same deadline as most other parties in this review. The Department attempts to argue that the procedural burden on the Department is in "accepting untimely SRCs. It is important for Commerce to receive SRCs in a timely fashion so that it can meet its own statutory deadlines" and then continues to discuss that it cannot select mandatory respondents until it has received the SRA/SRCs. Final IDM at 25-26. The Department postulates that "If Commerce were to allow parties to file SRAs/SRCs at various times (e.g., after the applicable deadline), it would continually restart the respondent selection

process and delay the start of the analytical work required." *Id*. Such a position actually only supports that the extended SRA/SRC deadline of December 12 should be regarded as the actual deadline, as Dongsheng did, otherwise the Department would have had to "restart the respondent selection process." This statement and the rejection of Dongsheng's SRC is inapposite. Further, the Department's practice is to select the largest exporters based on the U.S. import data, not based on any information in the SRC such that any process restarts at each SRC deadline. Or, if the Department was waiting to see which parties filed an SRC then it would not start the respondent selection process until the filing of all SRCs, and Dongsheng did file its SRC on the deadline that other parties filed their SRC.

Obviously the Department would not have had to "restart the respondent selection process" if it had considered Dongsheng's SRC because it was submitted when other parties submitted their SRCs. The Department in fact selected two companies that filed their SRCs *on the same day as* Dongsheng, i.e., December 12. The Department selected mandatory respondents 42 days after Dongsheng's submission of the SRC. Notably, the Department selected mandatory respondents that submitted their SRC on the same day as Dongsheng and the Department was far more familiar with Dongsheng than the exporters it selected. Therefore, accepting Dongsheng's SRC could not possibly have delayed the Department's review process in any way and in fact did not prejudice the Department procedurally in any way. *Usinor Sacilor v. United States*, 872 F. Supp. 1000, 1008 (Ct. Int'l Trade 1994) (noting how questionnaire responses and other factual information must "be submitted within a period that allows Commerce sufficient time for adequate analysis and comment while still meeting statutory deadlines").

The Department argues that to accept late SRCs would "only serve to provide such companies with additional time to prepare their SRA/SRC; more time than that provided to other parties" and "To promote fairness, and to avoid such advantages, it is, therefore, imperative that Commerce strictly enforce its deadlines, as the courts have supported." Final IDM at 26. This argument must fail when Dongsheng filed its SRC on the precise same deadline as several other parties. Moreover, what "advantage" could possibly be gained by Dongsheng having an additional week (again, the same time allotted to other parties) to submit a form that nothing had changed since the prior review? It was always manifestly clear that Dongsheng was slated to be a mandatory respondent who would have to complete the full Section A in any event.

Ultimately, the Department has cited to no burden on itself or any unfairness to other parties in the proceeding by accepting the late SRC. The Department attempts to justify its position from the *Chloropicrin from China Sunset review* and subsequent litigation upholding the Department's decision not to accept a late filing. Final IDM at 27. However, that case involved a late filing that would either end the case, and thus the Department's work, or continue to the review and Order. The burden on the Department in considering that late filing is substantial, it is the difference between a mere federal register notice or continued years of reviews. Here, the Department was going to continue the administrative review, review SRCs, select mandatory respondents, etc. no matter if Dongsheng filed its SRC or not. Further, the filing in that case was a complex substantive response, unlike the form SRC that merely confirms that nothing had changed since the prior reviews where Dongsheng was always mandatory.

The Department also rejects various other Court precedents raised by Dongsheng that the Department abuses its discretion when it rigidly applies deadlines without considering the circumstances. Final IDM at 28-29. In turn, the Department rejects each case because the facts

were not precisely the same as this case.  But in doing so, the Department is doing precisely what these cases reject, making a rigid brightline rule for late filing rather than considering the specific facts.  *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995) (The law does not permit the Department to impose a bright line rule); *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254, 1267 (Ct. Int'l Trade 2012) (discussing caselaw and the acceptance of untimely factual information filed in a ministerial error); *Timken U.S. Corp. v. United States*, 4343 F.3d 1345, 1351-52 (Fed. Cir. 2006) (holding that *NTN Bearing* was not limited to submission of clerical errors); *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1399 (February 18, 2021) (Finding Commerce abused its discretion in not considering a factual submission filed after the fact deadline and ordering the Department to consider it on remand.); *see also Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1366-1367 (September 23, 2019) (finding the Department abused its discretion when rejecting a submission after the public version was filed out of time).

Another recent decision on accepting untimely submission is also very relevant.  In *Cambria*, the Department had rejected a filing made in the afternoon when the deadline had been 10am.  While Dongsheng's SRC was filed 7-days late instead of a half-day late, the basic principles are the same.  In *Cambria*, Counsel made an inadvertent calendaring error and presumed that the extension was the normal 5pm deadline.  For Dongsheng, Counsel made an inadvertent calendaring error and presumed that the extension for SRCs applied to all parties.  In *Cambria*, the Department found that such an inadvertent error was not "extraordinary circumstances" just as the Department found for Dongsheng.  The Court in *Cambria*, found that the "Commerce's decision to reject Antique Group's submission was unreasonable and unsupported by substantial evidence, constituting an abuse of discretion."  *Cambria*, 705 F.

Supp. at 1378. The Court found that the Department failed to engage with the specific facts of *that* case. The Court contemplated that the untimely submission was inadvertent and relied on Department's regular practice of 5pm deadline. The Court also contemplated that the filing was not very late and was 45 days before the preliminary results. The untimely submission was inadvertent. Like in *Cambria*, the Department failed to consider the particular facts of *this* case, including the reliance on the other parties' extension, the nature of the filing, its impact on the proceeding[8], and that it was 292 days before the preliminary results.

Further, the lack of burden on the Department to have considered the SRC must also be measured against the draconian penalty on Dongsheng. In the Final Results, Dongsheng was considered part of the PRC-entity and assigned a punitive high triple digit rate on entries for this review. This means that not only will its entries liquidate at this very high rate that its U.S. importers must pay, but it deposit rate is set at this high punitive rate as well—effectively blocking it from the U.S. market.

Following the precedent in *Cambria* and other caselaw, the Court should find that the Department must engage with the particular facts of this case. The Court should further find that given the facts of this case, the Department abused its discretion not to accept Dongsheng's SRC slightly out of time in the context of that phase of the case and of the long course of months to go before its preliminary results were due under normal and actual practice. Ultimately, the Court should order the Department to re-instate the SRC on remand.

---

[8] The Department would either make respondent selection based on only on the CBP data already on the record, or wait till all SRCs were filed and Dongsheng filed its SRC on the same deadline as other parties, not later.

### B. The Department Acted Arbitrarily Considering its Own History of Late Filings and Accepting Late Filings.

The Department also acts arbitrarily when it is internally inconsistent and self-contradictory, and the agency treats similarly situated parties differently or fails to consider an important aspect of a problem. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); see also *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.") (alteration, quotation marks and citation omitted). The Department has found it was appropriate to accept late filing in other circumstances, both before and after the "extraordinary circumstances" regulation addition:

- In *Circular Welded Carbon-Quality Steel Pipe from India: Preliminary Determination of Sales at Less Than Fair Value, 77 Fed. Reg. 32,562 (June 1, 2012),* the Department stated that the respondent had submitted questionnaire responses that "have been in some instances untimely filed," with the submissions also "contain{ing} deficiencies." *Id.* at 32,564. Rather than reject these untimely responses, the Department accepted them and provided a warning to the respondent that no further late submissions would be tolerated. It was only after the respondent failed to meet an additional deadline that the Department rejected the final, untimely submission (but not the earlier, untimely submission) and resorted to facts available. *Id.*

- In *Stainless Steel Bar from India: Final Results of Antidumping Duty Administrative Review*, 74 Fed. Reg. 47,198 (Sept. 15, 2009), the petitioner objected to the use of information submitted by the respondent on the basis that the respondent had "made over 30 extension requests, and that most of them were not timely or properly filed." *Id.* at Decision Memorandum, Cmt 4. The Department noted that "some of the extension requests were filed after the due dates for the questionnaire responses" and that in other cases, only partial responses were given, with the respondents making only "informal requests to submit the remainder of the requested information after the due date." *Id.* Despite the Department "agree{ing} that Venus {the respondent} fail{ed} to submit its extensions requests properly, the Department accepted all of the late questionnaire submissions, specifically finding that doing so caused no prejudice to the petitioner because it was granted an opportunity to file comments "regardless of whether an extension was granted." *Id.*

- In *New Pneumatic Off-the-Road Tires from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review,* 75 Fed. Reg. 64,268 (Oct. 19, 2010), the Chinese Government refused to respond to a

questionnaire requesting information about the Chinese rubber, carbon black, and nylon cord industries. Even though the Government of China had not asked for an extension or responded to the questionnaire, instead stating merely that "it makes little sense to submit detailed answers to the questions set forth in the Commerce Department Questionnaire at this time," the Department gave the Chinese Government a second opportunity to respond to the same questionnaire. *Id.* at 64,272.

- In *Large Residential Washers From Mexico: Final Results of Antidumping Duty Administrative Review; 2016-2017*, 83 Fed. Reg. 11963 (March 19, 2018) and accompanying IDM at Comment 2, while not accepting late filing under the circumstances, the Department discussed that "[t]he acceptance of those untimely submissions was within Commerce's discretion to act equitably in limited situations where a party intended to meet the deadline and promptly notified Commerce to request an extension when it realized that it had not done so. In such limited situations, Commerce simply made clear to counsel given permission to file a late submission that they would not be afforded a second such opportunity.." during that proceeding.

- In *Welded Line Pipe from the Republic of Turkey*, (Feb. 23, 2015) (Access Barcode: 3260981-01), based on counsel's assurance that they would make every effort to stop and recheck deadlines when entering them on his calendar and to recheck them again throughout the process of working on the submissions, the Department reconsidered its decision to reject the supplemental questionnaire response filed late due to a calendaring mistake and accepted the submissions in total.

Moreover, the Department itself is far from perfect at meeting its deadlines. In this review for example, the Department's notice of initiation, which is of equally significant importance because it informs a party whether they are subject to the review and need to file an SRC/SRA, contained a similar inadvertent error where a respondent was not included. The error was not fixed by the Department for two months. *See* 88 Fed. Reg. 50 (January 3, 2023). This is not an uncommon occurrence for the Department.

The Department, via the Department of Justice, has also made numerous errors in failing to meet deadlines due to inadvertent errors in calendaring, but had their filing accepted late. Dongsheng provided a small sampling of examples where the Department of Justice, representing the Department, requested to make filing out of time. *See* Dongsheng Request to Accept at Attachment 3, **PR74**; *Clearon Corp. v. United States*, CIT 13-00073 Doc. No. 65 (Dec.

9, 2014) (explaining "[d]ue to an inadvertent error, Commerce did not understand that the Court had not granted the full amount of the requested enlargement and thus erroneously calendared the remand redetermination as due" on the incorrect date); *Zhongce Rubber Group Company Limited v. United States*, CAFC 20191421-Doc. No. 17 (May 31, 2019) (failing to file a response brief until notice 18 days later that it had missed the deadline); *Jacobi Carbons v. United States*, CIT 15-00286 Doc. No. 103 (August 9, 2017) (Arguing that failure to timely file Commerce's remand results was "excusable neglect" and that no parties were prejudiced by the late filing); *Inmax Sdn. Bhd v. United States*, CIT 17-00205 Doc. No. 72 (January 16, 2018) (Explaining that [t]hrough inadvertence, the agency improperly calendared the due date of this administrative remand records resulting in this out-of-time request."); *Yama Ribbons and Bows v. United States*, CIT 18-0054 Doc. No. 38 (March 12, 2020) (Explaining that "Commerce did not properly calendar the record index filing deadline to reflect the earlier filing date, and inadvertently did not ensure timely preparation of the record index.").

Dongsheng's inadvertent error was in filing its SRC seven days later and line with a broad extension for six other exporters' SRCs. It was arbitrary for Commerce to hold Dongsheng to a standard of perfection while not holding itself or its own legal representatives to the same standards. A standard of perfection no matter the circumstances is per se unreasonable, arbitrary and capricious.

### C.   The Department's Determination Not to Select Dongsheng, as the Largest Exporter, as a Mandatory Respondent and Rely on Dongsheng's Timely Section A is Contrary to Law.

Dongsheng was going to be selected as the mandatory respondent and the Department normally would have relied upon its Section A questionnaire response. Dongsheng's import value represented approximately [    ] percent of the total value from all companies. The next

largest exporter only had [    ] percent.  *See* CBP Data (December 9, 2023); **CR9 PR42**.  Even in the original CBP data filed on November 18, 2022 (that was later corrected), Dongsheng was the largest exporter with approximately [    ] of the value.  It was a fact on the record, since November 18, 2022, that Dongsheng would be one of the mandatory respondents in this review.  As provided in the SRA, applicants that have been selected as mandatory respondent "are not required to file a separate rate application."  China Separate Rate Application at 4.  Indeed, even if an applicant files an SRC or SRA, the "mandatory respondents are required to file full Section A questionnaire responses, including all separate rate information, and cannot refer to or substitute information or supporting documentation submitted in a separate rate application."  *Id*.  The SRC also contains the same requirement that a mandatory respondent must respond to the Department's questionnaire to retain separateness.  China SRC at 2.  The Department would not have relied upon the information in Dongsheng's SRC, but instead would have relied upon and required a full response to the Section A questionnaire response for this specific information.  Therefore, the Department was not deprived of any information required from Dongsheng by the short delay in filing the SRC.  The Department never would have needed that information because it was a fact on the record that Dongsheng would be selected as a mandatory respondent under the Department's longstanding practice to select among the largest exporters to capture as much of the export quantity as possible for specific review given its limited resources.

Indeed, in a contemporaneous case to this review, a party, CRE8 Ningbo, did not file an SRA by the deadline and yet the Department subsequently selected them as a mandatory respondent and issued them the questionnaire.  *See* Dongsheng Request to Accept at Attachment 2; **PR74**.  In another earlier case, the Department selected Hengtong Castings as a mandatory respondent notwithstanding its failure to participate in the SRA process.  Notably, again, in

making this respondent selection process, the Department only considered the quantity and value of the imports and did not consider whether or not the companies did not file Separate Rate Applications. *Cast Iron Soil Pipe From the People's Republic of China: Initiation of Less Than-Fair Value Investigation*, 83 Fed. Reg. 8053 (February 23, 2018). Applying one rule to one party and applying the inverse rule to another party, such as here, is arbitrary and capricious. *Dongbu Steel Co., Ltd. v. US*, 635 F. 3d 1363 (Fed. Cir. 2011).

Further, the Department is directed to rely upon the largest exporter. *See* Respondent Selection Memo (January 23, 2023) (discussing the statutory obligations for selection) **PR64**. The statute directs the Department to either rely on a statistically valid sample or the "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that the administering authority determines can be reasonably examined." 19 U.S.C. 1677f-1(c)(2). The Department violated this statutory mandate when it refused to rely upon Dongsheng, the largest exporter. Further, Dongsheng was cooperating in its CBP comments and made its desire to be a cooperative respondent not only in those submission, but in its submissions later asking that the Department accept its SRC or Section A.

Dongsheng acknowledges that the initiation notice of this case did say if an exporter or producer "want to be considered in the respondent selection", they must file a timely SRA or SRC. 87 Fed. Reg. 66275, 66276 (November 3, 2022). But this entails that the filing of an SRA/SRC, for the purpose of mandatory selection consideration by the Department is an action from the exporter/producer to show the Department their willingness to be considered in the mandatory selection. Before the Department made its mandatory selection determination, Dongsheng had already definitively established that it would cooperate. Dongsheng timely filed CBP comments alerting the Department to apparent errors in the CBP data and submitting that

the data did not include all of its own entries, establishing Dongsheng's interest in participating in this review and being selected as a mandatory respondent. *See* Dongsheng CBP Comments (November 23, 2022); **CR3 PR22**. Dongsheng's submission of an SRC, albeit by the 7-day extended deadline, also established its cooperation. Dongsheng subsequently filed multiple letters, a voluntary section A response, and requested, and attended, a virtual meeting with the Department discussing its wish to participate and be selected as a mandatory respondent. Dongsheng has always fully participated through three prior proceedings, and everything in this review established Dongsheng's intention and desire to participate and be selected in this administrative review. The Department certainly was not burdened by missing any information concerning Dongsheng to impact respondent selection. In contrast, as discussed above, the harm to Dongsheng is substantial and irreparable. As such, the Department's determination not to select Dongsheng's Section A questionnaire response and select Dongsheng as a mandatory or voluntary respondent is also unsupported by the record.

**V.      The Department had No Basis to Resort to AFA.**

Even if the Court sustains the Department rejection of the SRC and lack of reliance on the Section A, the Court should find that the Department's application of adverse facts available was not supported by law or substantial evidence. The Department rejected Dongsheng's analysis of AFA statute and caselaw, stating that it did not apply AFA to Dongsheng but rather found that it failed to file its SRC and thus failed to rebut the presumption of state control and is thus part of the PRC-entity. Final IDM at 27 ("the agency simply treated the company as part of the China-wide entity for failing to demonstrate its eligibility for a separate rate."). This is in effect the same as AFA. The AFA rate is the PRC-entity rate. Dongsheng received this rate due to its failure to provide requested information. 19 U.S.C. § 1677e(a)(2) (the basis for applying

AFA is withholding information, failing to provide information, or impeding a proceeding).

In discussing the application AFA, the Court has found that "{b}efore making an adverse inference, Commerce must examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information…. the standard does not require perfection and recognizes that mistakes sometimes occur..." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381-83 (Fed. Circ. 2003). In Cambria, the Court also discussed this in the application of AFA after the party made a filing late, considering that:

> Commerce's determination that Antique Group failed to act to the best of its ability is unsupported by substantial evidence. **First, Antique Group had complied with all prior deadlines throughout the course of Commerce's review**. Second, as noted above, no party argues that Antique Group's failure to meet the 10 a.m. deadline was anything more than a calendaring error and, but for Commerce's arbitrary setting of the 10 a.m. deadline, Antique Group's response would have been timely. Third, Antique Group explained to Commerce that it had established remedial measures to prevent future late filings. **A single late response is not determinative that a respondent has not acted to the "best of its ability" to cooperate because "mistakes sometimes occur**." *Nippon Steel Corp.*, 337 F.3d at 1382.

*Cambria*, 705 F. Supp. 3d at 1380 (emphasis added)

Dongsheng has always cooperated with the Department's deadlines in the past and even in this very review, Dongsheng pointed out the customs data problems so the review would be more accurate and more faithfully fulfill Commerce's policy goals in capturing the maximum exports in the AD calculations when considering respondent selection. The context of this being a third consecutive review with Dongsheng's full cooperation must also be considered favorably for Dongsheng. The Department already found in its initial investigation, first administrative review, and second review that Dongsheng continuously was separate from the PRC Entity. Indeed, the last SRC filed contains licenses demonstrating ownership that overlaps with the instant period of review. Dongsheng Request at 4 – 7; **PR74**. Throughout all the almost five

years covering these segments, Dongsheng has willingly and completely cooperated with the Department's investigative procedures, and the Department has assigned Dongsheng its own margin based on Dongsheng's full and robust cooperation in each instance.  Justice requires that the Department consider Dongsheng's history of participation and cooperation and absolute compliance with the Department's innumerable deadlines throughout this time.  Any other result would throw justice out the window and demonstrate that the Department is intent on conducting its proceedings with a Procrustean[9] consistency against which the Federal Circuit warns.  *See Stupp Corp. v. United States*, 5 F.4th 1350-51 (Fed. Cir. 2021).

Moreover, Dongsheng's counsel met virtually with high level Commerce officials who know of counsel's excellent compliance with SRC/SRA deadlines spanning over 30 years of practice.  During that meeting[10], and in light of the extreme and unreasonable direction of Commerce's decision, counsel explained remedial procedures that any future SRC/SRA extensions would require double approval of senior counsel / partners at both counsel's law firm and with the exporter or its legal representatives.

---

[9] "The word Procrustean is perfect for describing a person or institution that forces people to conform.  Tyrannical governments can be Procrustean, as can certain clubs and organizations.  This marvelous adjective characterizing pointless or ruthless demand for conformity owes its meaning to a son of the Greek god Poseidon: Procrustes, who stretched his guests or cut off their legs in order to make them fit his bed.

Definitions of Procrustean: adjective enforcing conformity by violent or ruthless means, like the mythical giant Procrustes or his mode of torture."  Available at: https://www.vocabulary.com/dictionary/Procrustean (last accessed 2/7/2023).

[10] In reflecting back on a 30-year practice, our practice group has never missed an SRC/SRA deadline before.  That said, the Department is generally quite reasonable about granting extensions when needed.  The problem here arises when, acting in good faith, counsel was not aware of the need to request that the extension granted should be extended to all respondents.  Commerce's enforcement in this case and in the recent *Cambria* case amounts to a standard of perfection imposed on exporters and their counsel with draconian consequences.  The impact of this enforcement standard regarding "extraordinary circumstances" seems to only fall on exporters and the respondents' bar.  There is no comparable risk or penalty for the petitioners' bar, because the Department continues to investigate respondents regardless of comments from petitioners.  This is another reason why this rule and practice is arbitrary and capricious.

The Department's application of the PRC-entity rate equates to a finding of total AFA for failure to cooperate at the very outset of the proceeding contrary to Dongsheng's cooperation and the Department's policy goals. *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) ("The purpose of the adverse facts statute is to provide respondents with an incentive to cooperate with Commerce's investigation, not to impose punitive damages."); *Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361, 1374 (April 2020) (Commerce must balance the policies of accuracy and deterrence, or risk potentially undercutting "the cooperation-promoting goal of the AFA statute.") (*quoting Changzhou Wujin*, 701 F.3d at 1378; *citing Mueller*, 753 F.3d at 1234).

The punitively high rate also bears no rational relationship to Dongsheng's anticipated margins. Donghseng had been a mandatory respondent in the investigation and two prior reviews, covering the time period from October 2017 to August 2021. Dongsheng received margins of 18.06 percent, 9.99 percent, and 13.88 percent. The margin assigned to Dongsheng in this review was 144.50 percent from the petition. This is not an accurate, reasonable, or contemporaneous margin for Dongsheng. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1380 (Fed. Cir. 2013) (the rate assigned "was required to reflect commercial reality and thus, to be 'a reasonably accurate estimate' of actual dumping rates… Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin.") (*quoting Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1324 (Fed. Cir. 2010)).

For all the reasons discussed above and provided in Dongsheng's earlier requests to accept their SRC, Dongsheng maintains that the Department should at a minimum accept Dongsheng's SRC and assign Dongsheng a separate rate. The Department has further reason to do this given Dongsheng's full separate rate application filed with its voluntary Section A

response. The SRA, as part of the Section A questionnaire, was timely filed within the deadline provided by the law. 19 U.S.C. 1677m(a)(1)(A). It was timely on the record and definitively proves, as certified by Dongsheng in its SRC, that Dongsheng has fulfilled all requirements for a separate rate, as Dongsheng has in all past reviews. The SRA rate for this case was 12.73%.

The Department subsequently rejected Donsheng's Section A—but not until August 18, 2023. The Department is required to reject any documents that it otherwise deems untimely in a reasonably expeditious manner. It was not reasonable or fair for the Department to reject Dongsheng's SRA (as included in the Section A) *a full 184 days after* it was submitted. By this time, Dongsheng had relied upon the Department's non-rejection of this submission in the conduct of its handling of the review forward from that date. Accordingly, for this reason as well, the Department should find that the timely submitted SRA included in the Section A response was properly on the record and establishes that Dongsheng has met all requirements for a separate rate. The Department should reinstate Dongsheng's SRA as filed in its Section A response (or reinstate its SRC), and should assign Dongsheng its rate from the prior review as its own individually calculated separate rate or the separate rate in this review, which is very similar.

## VI.    Conclusion and Prayer for Relief

In light of the foregoing, the Department's *Final Results* were not supported by

substantial evidence or in accordance with the law.  Plaintiff respectfully requests that the Court

remand this case for redetermination of the issues presented in this brief.

Respectfully submitted,

 /s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
J. Kevin Horgan
**deKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
Date: October 25, 2024                    *Counsel to Plaintiff*

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **7,995** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**DeKieffer & Horgan, PLLC**
Suite 1101
1156 Fifteenth Street., N.W. 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email: gmenegaz@dhlaw.com
*Counsel to Plaintiff*