## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NANJING DONGSHENG SHELF MANUFACTURING CO., LTD., ) <br> Plaintiff, <br> v. <br> UNITED STATES, <br> Defendant, <br> and <br> COALITION FOR FAIR RACK IMPORTS, <br> Defendant-Intervenor. | Court No. 24-00085 |

### <u>ORDER</u>

Upon consideration of the motion for judgment upon the administrative record filed by plaintiff, responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED;

ORDERED that the Department of Commerce's determination is affirmed in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____                    _____
      New York, New York                          Jennifer Choe-Groves, Judge

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| NANJING DONGSHENG SHELF MANUFACTURING CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Court No. 24-00085 |
| UNITED STATES, | ) ) | PUBLIC DOCUMENT |
| Defendant, | ) ) ) | |
| and | ) ) | |
| COALITION FOR FAIR RACK IMPORTS, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

|  | BRETT A. SHUMATE |
|---|---|
|  | Acting Assistant Attorney General |
|  |  |
|  | PATRICIA M. MCCARTHY |
|  | Director |
|  |  |
|  | TARA K. HOGAN |
|  | Assistant Director |
|  |  |
|  | LAUREL D. HAVENS III |
| OF COUNSEL: | Trial Attorney |
|  | U.S. Dept. of Justice |
| JESUS N. SAENZ | Civil Division |
| Senior Attorney | Commercial Litigation Branch |
| Office of the Chief Counsel | P.O. Box 480, Ben Franklin Station |
| for Trade Enforcement and Compliance | Washington, D.C. 20044 |
| U.S. Department of Commerce | Telephone: (202) 307-0309 |
| Washington, D.C. 20230 | E-mail: Laurel.Havens@usdoj.gov |
|  |  |
| January 28, 2025 | Attorneys for Defendant |

## TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 .................................................................. 2

    I.    Administrative Determination Under Review ......................................... 2

    II.    Issues Presented For Review ................................................................. 2

STATEMENT OF FACTS ......................................................................................... 2

SUMMARY OF ARGUMENT .................................................................................. 7

ARGUMENT ............................................................................................................ 8

    I.    Standard Of Review ............................................................................. 8

    II.    Commerce's Rejection Of Dongsheng's Untimely Separate Rate Certification Was Lawful, Supported By Substantial Evidence, And Not An Abuse Of Discretion .... 9

        A.  Legal Framework ......................................................................... 9

        B.  Commerce Lawfully Rejected Dongsheng's Untimely Separate Rate Certification ............................................................................ 10

        C.  Commerce Did Not Abuse Its Discretion By Rejecting Dongsheng's Untimely Separate Rate Application ............................................ 12

        D.  Commerce's Decision In This Case Was Not Arbitrary ................................. 17

    III.    Commerce's Decision to Not Select Dongsheng as a Respondent was Lawful and Supported by Substantial Evidence .................................................... 19

    IV.    Commerce Did Not Rely on 19 U.S.C. § 1677e(a) to Find That Dongsheng Is Part of the China-Wide Entity ............................................................ 21

CONCLUSION .................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                   **Page(s)**

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ...............................................................................9

*Bosun Tools Co. v. United States*,
   405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019) ...........................................................16

*Cambria Co. LLC v. United States*,
   705 F. Supp. 3d 1369 (Ct. Int'l Trade 2024) ....................................................16, 22

*Carpenter Tech. Corp. v. United States*,
   510 F.3d 1370 (Fed. Cir. 2007) .............................................................................21

*Celik Halat ve Tel Sanayi A.S. v. United States*,
   557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ...........................................................14

*China Mfrs. Alliance, LLC v. United States*,
   1 F.4th 1028 (Fed. Cir. 2021) ..........................................................................19, 22

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ...............................................................................................9

*Diamond Sawblades Mfrs. Coal. v. United States*,
   866 F.3d 1304 (Fed. Cir. 2017) .............................................................................22

*Dongtai Peak Honey Indus. Co. v. United States*,
   777 F.3d 1343 (Fed. Cir. 2015) ........................................................................12, 15

*Dongtai Peak Honey Indus. Co. v. United States*,
   971 F. Supp. 2d 1234 (Ct. Int'l Trade 2014), *aff'd*, 777 F.3d 1343 (Fed. Cir. 2015)..........12, 18

*Fine Furniture (Shanghai) Ltd. v. United States*,
   865 F. Supp. 2d 1254 (Ct. Int'l Trade 2012) ...........................................................16

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ................................................................................9

*Gov't of Argentina v. United States*,
   542 F. Supp. 3d 1380 (Ct. Int'l Trade 2021) ...........................................................12

*Grobest & I-Mei Industries Co. v. United States*,
   815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ...........................................................13

*Haixing Jingmei Chem. Prod. Sales Co. v. United States*,
  335 F. Supp. 3d 1330 (Ct. Int'l Trade 2018) ............................................................12

*Jinko Solar Imp. & Exp. Co. v. United States*,
  701 F. Supp. 3d 1367 (Ct. Int'l Trade 2024) .................................................18, 22

*Maverick Tube Corp. v. United States*,
  107 F. Supp. 3d 1318 (Ct. Int'l Trade 2015) .................................................12, 18

*MTZ Polyfilms, Ltd. v. United States*,
  659 F. Supp. 2d 1303 (Ct. Int'l Trade 2009) ............................................................21

*Neo Solar Power Corp. v. United States*,
  190 F. Supp. 3d 1255 (Ct. Int'l Trade 2016) .................................................12, 15

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003) ............................................................22

*PSC VSMPO-Avisma Corp. v. United States*,
  688 F.3d 751 (Fed. Cir. 2012) ............................................................14

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
  497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ............................................................16

*Tau-Ken Temir LLP v. United States*,
  587 F. Supp. 3d 1346 (Ct. Int'l Trade 2022), *appeal pending*, Fed. Cir. No. 2022-2204 .........17

*Timken U.S. Corp. v. United States*,
  434 F.3d 1345 (Fed. Cir. 2006) ............................................................16

*Trinity Manufacturing, Inc. v. United States*,
  549 F. Supp. 3d 1370 (Ct. Int'l Trade 2021) ............................................................13

*United States v. Eurodif S.A.*,
  555 U.S. 305 (2009) ............................................................9

*Yantai Timken Co. v. United States*,
  521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007), *aff'd*, 300 F. App'x 934 (Fed. Cir. 2008) ...........12

**Statutes**

5 U.S.C. § 706(2) ............................................................9

19 U.S.C. § 1516a(b) ............................................................9, 21

19 U.S.C. § 1677e(a) ................................................................................................21

19 U.S.C. § 1677e(b) ...............................................................................................22

19 U.S.C. § 1677f-1(c) .............................................................................................19

19 U.S.C. § 1677m(a) ........................................................................................19, 20

**Rules**

U.S. Ct. Int'l Trade R. 6(b) .....................................................................................19

U.S. Ct. Int'l Trade R. 56.2 .......................................................................................1

**Regulations**

19 C.F.R. § 351.204(d) .............................................................................................20

19 C.F.R. § 351.302 ...................................................................................................9

19 C.F.R. § 351.302(b) ...............................................................................................9

19 C.F.R. § 351.302(c) .......................................................................................passim

19 C.F.R. § 351.303(b) .............................................................................................16

**Other Authorities**

*Cast Iron Soil Pipe From the People's Republic of China: Initiation of Less Than-Fair Value Investigation,*
    83 Fed. Reg. 8,053, (Dep't of Commerce Feb. 23, 2018) ......................................21

*Certain Carbon and Alloy Steel Cut-To-Length Plate from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value,*
    82 Fed. Reg. 8,510 (Dep't of Commerce Jan. 26, 2017) ......................................20

*Certain Steel Racks and Parts Thereof from the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Countervailing Duty Order,*
    84 Fed. Reg. 48,584 (Dep't of Commerce Sept. 16, 2019)...................................2, 3

*Certain Steel Racks and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022*,
   89 Fed. Reg. 25,235 (Dep't of Commerce Apr. 10, 2024), and accompanying Issues and
   Decision Memorandum (Dep't of Commerce Apr. 3, 2024)............................................*passim*

*Certain Steel Racks and Parts Thereof From the People's Republic of China: Preliminary Results and Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2021–2022*,
   88 Fed. Reg. 69,612 (Dep't of Commerce Oct. 6, 2023), and accompanying preliminary
   determination memorandum (PDM)...........................................................................6

*Extension of Time Limits*,
   78 Fed. Reg. 57,790-02 (Dep't of Commerce Sept. 20, 2013) .........................................*passim*

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   87 Fed. Reg. 66,275 (Dep't of Commerce Nov. 3, 2022)..................................................3, 6, 11

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   88 Fed. Reg. 50 (Dep't of Commerce Jan. 3, 2023).................................................................3

*Modification of Regulation Regarding the Extension of Time Limits*,
   78 Fed. Reg. 3,367 (Dep't of Commerce Jan. 16, 2013) .................................................10, 15

*Paper File Folders From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value*,
   88 Fed. Reg. 31,486 (Dep't of Commerce May 17, 2023) .....................................................21

*Utility Scale Wind Towers from the Socialist Republic of Vietnam: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*,
   85 Fed. Reg. 40,226 (Dep't of Commerce July 6, 2020), and accompanying Issues and
   Decision Memorandum (Dep't of Commerce June 29, 2020)...........................................17, 18

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NANJING DONGSHENG SHELF MANUFACTURING CO., LTD., ) | |
| Plaintiff, ) | |
| v. ) | Court No. 24-00085 |
| UNITED STATES, ) | PUBLIC DOCUMENT |
| Defendant, ) | |
| and ) | |
| COALITION FOR FAIR RACK IMPORTS, ) | |
| Defendant-Intervenor. ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to United States Court of International Trade Rule 56.2, defendant, the United States, respectfully responds to the motion for judgment on the agency record and memorandum in support filed by plaintiff Nanjing Dongsheng Shelf Manufacturing Co., Ltd. (Dongsheng), ECF No. 25 (Dongsheng Br.).  Dongsheng challenges the Department of Commerce's final results in the administrative review of the antidumping duty order covering certain steel racks and parts thereof from the People's Republic of China.  For the reasons explained below, the Court should sustain the final results as supported by substantial evidence and otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

I.    Administrative Determination Under Review

The administrative determination under review is the final results of the antidumping duty order covering steel racks from China. *See Certain Steel Racks and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021– 2022*, 89 Fed. Reg. 25,235 (Dep't of Commerce Apr. 10, 2024) (*Final Results*) (P.R. 263),[1] and accompanying Issues and Decision Memorandum (IDM) (Dep't of Commerce Apr. 3, 2024) (P.R. 262). The period of review was September 1, 2021, through August 31, 2022.

II.    Issues Presented For Review

1.    Whether Commerce's rejection of Dongsheng's untimely filed separate rate certification was in accordance with law, supported by substantial evidence, and within its discretion.

2.    Whether Commerce's decision to not select Dongsheng as a mandatory respondent was supported by substantial evidence and in accordance with law.

3.    Whether Commerce's treatment of Dongsheng as part of the China-wide entity, based on its failure to timely submit a separate rate certification, is not a finding based on adverse facts available.

## STATEMENT OF FACTS

Commerce has published an antidumping duty order on steel racks from China. *Certain Steel Racks and Parts Thereof from the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Countervailing Duty*

---

[1]  Citations to the public record (P.R.) refer to the record of this antidumping duty review.

*Order*, 84 Fed. Reg. 48,584 (Dep't of Commerce Sept. 16, 2019).

On September 29, 2022, Dongsheng filed a request for administrative review. Dongsheng Request for Administrative Review (Sept. 29, 2022) (P.R. 6). Commerce also received requests to review 11 other companies.

On January 3, 2023, Commerce initiated the administrative review. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 66,275 (Dep't of Commerce Nov. 3, 2022) (P.R. 12) (*Initiation Notice*), as corrected in *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 50 (Dep't of Commerce Jan. 3, 2023) (P.R. 61). Dongsheng was identified as a respondent subject to the review. 87 Fed. Reg. at 66,278.

Commerce's initiation notice provided respondents information regarding the procedures for establishing whether a firm is entitled to a separate rate. *Initiation Notice*, 87 Fed. Reg. at 66,276. In proceedings involving a non-market economy, Commerce assigns separate rates to firms only if they can demonstrate that its export activities are sufficiently independent from government control. *Id.* In the initiation notice, Commerce stated that any company wishing to qualify for separate rate status must complete either a separate rate application or certification. *Id.* A timely separate rate application or certification was required to be considered for respondent selection. *Id.* If a company received a separate rate in the most recent segment of the proceeding, Commerce required the completion of a separate rate certification. *Id.* Commerce also provided all parties instructions for obtaining a separate rate certification, and notified parties that such certifications were due 30 days after publication of the initiation notice. *Id.* When calculated, the deadline for filing separate rate applications and certifications was December 5, 2022.

Prior to the deadline for filing separate rate applications and certifications, Commerce received timely extension requests for filing a separate rate application from Ningbo Xinguang Rack Co., Ltd. (Xinguang), Jiangsu JISE Intelligent Storage Equipment Co., Ltd. (JISE), Jiangsu Nova Intelligent Logistics Equipment Co., Ltd. (Nova), and Suntop (Xiamen) Display System Inc. (Suntop).  Ironstone, Luckyroc, and Xinguang Extension Request (Nov. 28, 2022) (P.R. 28); JISE and Nova Separate Rate Application Extension Request (Nov. 29, 2022) (P.R. 29); and Suntop Separate Rate Application Extension Request (Dec. 1, 2022) (P.R. 35).  Commerce granted extensions for each of these filed extension requests.  Commerce Letter Granting Ironstone, Luckyroc, and Xinguang Extension Request (Dec. 2, 2022) (P.R. 36); Commerce Letter Granting JISE and Nova Extension Request (Dec. 2, 2022) (P.R. 37); and Commerce Letter Granting Suntop Extension Request (Dec. 2, 2022) (P.R. 38).  Nanjing Ironstone Storage Equipment Co., Ltd. (Ironstone) and Xiamen Luckyroc Industry Co., Ltd. (Luckyroc) submitted an extension request to file a no sales certification.  Ironstone, Luckyroc, and Xinguang Extension Request (P.R. 28).  Dongsheng—represented by the same counsel as Ironstone, Luckyroc, and Xinguang—did not request an extension for filing its separate rate certification prior to the December 5 deadline.

From December 5, 2022, through December 12, 2022, Commerce received timely separate rate applications from Nanjing Kingmore Logistics Equipment Manufacturing Co., Ltd (Nanjing Kingmore), Ironstone, Luckyroc, Xinguang, JISE, Nova, and Suntop.  Nanjing Kingmore Separate Rate Certification (Dec. 5, 2022), Nova Separate Rate Certification (Dec. 5, 2022), JISE Separate Rate Certification (Dec. 12, 2022), Suntop Separate Rate Certification (Dec. 12, 2022), Xinguang Separate Rate Certification (Dec. 12, 2022).

One week after the deadline for filing separate rate certifications, on December 12, 2022,

Dongsheng filed its separate rate certification.  Rejected Dongsheng Separate Rate Certification (Dec. 12, 2022) (P.R. 45).  On January 17, 2023, Commerce rejected Dongsheng's untimely filed separate rate certification from the administrative record.  Commerce's Rejection of Dongsheng's Separate Rate Certification (Jan. 17, 2023) (P.R. 62).

On January 23, 2023, Commerce selected Suntop and Xinguang as mandatory respondents to individually examine in the administrative review.  Respondent Selection Memorandum (Jan. 23, 2023) (P.R. 64).  After review of data from U.S. Customs and Border Protection, Suntop and Xinguang were selected because they account for "the largest value of the subject merchandise entered into the United States during the {period of review} who timely submitted {separate rate applications} or {separate rate certifications}."  *Id.* at 6.  On January 25, 2023, Dongsheng requested that Commerce accept its untimely separate rate certification and select it as a mandatory respondent.  Dongsheng Request to Accept Separate Rate Certification and Select as Mandatory Respondent (Jan. 25, 2023) (P.R. 74).

On February 13, 2023, Commerce held an *ex-parte* meeting with Dongsheng's counsel. Memorandum Regarding Meeting with Dongsheng Counsel (Feb. 16, 2023) (P.R. 93). Commerce officials and Dongsheng's counsel discussed Commerce's decision to reject Dongsheng's untimely separate rate certification.  *Id.*  Dongsheng's counsel stated that they assumed the extensions of time granted to other firms also applied to Dongsheng.  *Id.* Commerce inquired why Dongsheng's counsel submitted requests on behalf of Ironstone and Luckyroc for additional time to submit no sales certifications—and a request on behalf of Xinguang for additional time to submit its separate rate application—if counsel presumed only a single extension request was required to extend the deadlines to all firms.  *Id.* at 2.  "Counsel responded that it only submitted requests for its clients that needed an extension of the no sales

certification and {separate rate certification/separate rate application} deadlines." *Id.*

On February 15, 2023, Dongsheng filed a Section A Questionnaire Response seeking to participate as a voluntary respondent. Dongsheng Rejected Section A Questionnaire Response (Feb. 15, 2023) (P.R. 91). Commerce rejected Dongsheng's Section A Questionnaire Response because Dongsheng failed to timely submit its separate rate certification and, thus, was ineligible to participate in the administrative review as a mandatory respondent. Rejection of Response to Section A Questionnaire (Aug. 18, 2023) (P.R. 177); IDM at 31; *Initiation Notice*, 87 Fed. Reg. at 66,276.

On March 2, 2023, Commerce decided not to reconsider its prior decision to reject Dongsheng's untimely separate rate certification. Commerce Decision Not to Reconsider Rejection of Dongsheng's Separate Rate Certification (Mar. 2, 2023) (P.R. 108). Commerce found that Dongsheng failed to submit any extension request, timely or untimely, seeking additional time to submit its separate rate certification. *Id*. at 2. Commerce also determined that Dongsheng failed to cite any extraordinary circumstances, consistent with 19 C.F.R. § 351.302(c), to warrant accepting the untimely filed separate rate certification. *Id*. at 2.

On October 6, 2023, Commerce published its preliminary results. *Certain Steel Racks and Parts Thereof From the People's Republic of China: Preliminary Results and Partial Rescission of the Antidumping Duty Administrative Review, and Preliminary Determination of No Shipments; 2021–2022*, 88 Fed. Reg. 69,612 (Dep't of Commerce Oct. 6, 2023) (P.R. 220) (preliminary results), and accompanying preliminary determination memorandum (PDM). Commerce preliminarily determined that Dongsheng failed to demonstrate its eligibility for a separate rate because it failed to timely file a separate rate certification. *Id*. at 69,613. As a result, Commerce preliminarily treated Dongsheng as part of the China-wide entity. *Id*.

After the preliminary results, Dongsheng filed a case brief arguing that Commerce abused its discretion by rejecting its untimely separate rate certification. Dongsheng Case Brief at 1–12 (Nov. 13, 2023) (P.R. 245). Petitioner, the Coalition for Fair Rack Imports, filed a rebuttal case brief responding to Dongsheng's argument. Petitioner Rebuttal Brief (Nov. 27, 2023) (P.R. 252). The Coalition argued that Dongsheng failed to demonstrate that any "extraordinary circumstances" existed to prevent the timely submission of the separate rate certification and, thus, Commerce was correct in rejecting the untimely filing. *Id.* at 9.

On April 10, 2024, Commerce published its final results. Commerce considered the parties' arguments concerning whether Commerce should accept Dongsheng's untimely filed separate rate certification. *See* IDM at Cmt. 7. Commerce again concluded that Dongsheng failed to file its separate rate certification in a timely manner. *Id.* Specifically, Commerce determined that Dongsheng failed to request an extension of time to submit its untimely separate rate certification, and that Dongsheng did not demonstrate that any "extraordinary circumstances" prevented it from timely filing its separate rate certification. *Id.* at 24. Further, Commerce noted that failure to timely file a separate rate certification barred Dongsheng from respondent selection. *Id.* at 30–31. Thus, Commerce found Dongsheng to be part of the China-wide entity and applied the China-wide entity dumping margin of 144.50 percent. *Final Results*, 89 Fed. Reg. at 25,237.

## SUMMARY OF ARGUMENT

The Court should sustain the final results because Commerce's determinations are both supported by substantial evidence and in accordance with law. First, Commerce lawfully rejected Dongsheng's untimely separate rate application. There is no dispute that Dongsheng did not request an extension of time to submit its separate rate certification. There is also no dispute

that Dongsheng filed its separate rate certification after the deadline provided by Commerce in its initiation notice. Dongsheng offered no "extraordinary circumstances" in its requests for Commerce to reconsider its rejection of the untimely filing, in accordance with its regulatory requirements at 19 C.F.R. § 351.302(c). Thus, Commerce lawfully rejected Dongsheng's untimely separate rate certification.

Second, Commerce's decision not to select Dongsheng as a mandatory respondent was in accordance with law. In its initiation notice, Commerce notified exporters and producers that they were required to file a timely Separate Rate Application or Certification to be considered for respondent selection. Dongsheng did not do so. Accordingly, Commerce reasonably rejected Dongsheng's Section A questionnaire response and request to be considered as a voluntary respondent.

Lastly, the Court should reject Dongsheng's argument that, by rejecting its untimely separate rate certification, Commerce relied upon the adverse facts available provision of the statute. Instead, having determined that Dongsheng did not demonstrate independence from the Chinese government, by failing to file a separate rate application accepted on the record, Commerce considered Dongsheng to be part of the China-wide entity. As the Federal Circuit has consistently held, Commerce may apply the country-wide rate to a cooperative exporter or producer that does not timely submit a separate rate certification and rebut the presumption of state control.

## **ARGUMENT**

I.    Standard Of Review

The Court sustains any determination, finding, or conclusion by Commerce unless it is unsupported by substantial evidence on the record, or otherwise unlawful. *Fujitsu Gen. Ltd. v.*

*United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see*

*United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ("The specific factual findings on

which {Commerce} relies in applying its interpretation are conclusive unless unsupported by

substantial evidence.") (citing to 5 U.S.C. § 706(2)(E)).  Substantial evidence connotes "more

than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion, taking into account the entire record, including whatever fairly detracts

from the substantiality of the evidence."  *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562

(Fed. Cir. 1984) (footnote and internal quotation marks omitted).  Substantial evidence may be

"less than the weight of the evidence," and the possibility of drawing inconsistent conclusions

from the record does not render findings unsupported by substantial evidence.  *Consolo v. Fed.*

*Mar. Comm'n*, 383 U.S. 607, 620 (1966).

II.    Commerce's Rejection Of Dongsheng's Untimely Separate Rate Certification Was
       Lawful, Supported By Substantial Evidence, And Not An Abuse Of Discretion

Commerce lawfully rejected Dongsheng's untimely separate rate certification and its

subsequent requests for reconsideration in accordance with 19 C.F.R. § 351.302.

A.    Legal Framework

In proceedings before Commerce, parties may file requests to extend deadlines.  When an

extension request is made before the deadline, the party must state the reasons for the request,

and Commerce may grant the request for good cause shown.  *See* 19 C.F.R. § 351.302(b)–(c).

Commerce's regulations also permit parties to file extension requests after a deadline has passed.

*See id*.  In promulgating its regulations, however, Commerce concluded that it "would be

counterproductive to set the same standard for untimely extension requests" as for timely

requests, because "parties would have no incentive for filing timely extension requests."

*Extension of Time Limits*, 78 Fed. Reg. 57,790-02, 57,793-02 (Dep't of Commerce Sept. 20,

2013); *see also Modification of Regulation Regarding the Extension of Time Limits*, 78 Fed. Reg. 3,367, 3,370 (Dep't of Commerce Jan. 16, 2013) (explaining that adopting "good cause" standard for untimely requests "will perpetuate the undue expenditure of Departmental resources in addressing extension requests").  Thus, Commerce will consider extension requests that are made after a deadline has passed under an extraordinary circumstances standard.  19 C.F.R. § 351.302(c).

Specifically, "{a}n extension request will be considered untimely if it is received after the applicable time limit expires or as otherwise specified by the Secretary" and "{a}n untimely filed extension request will not be considered *unless the party demonstrates that an extraordinary circumstance exists*."  19 C.F.R. § 351.302(c) (emphasis added).  An "extraordinary circumstance" is defined as "an unexpected event" that: (1) "{c}ould not have been prevented if reasonable measures had been taken;" and (2) "{p}recludes a party or its representative from timely filing an extension request through all reasonable means."  19 C.F.R. § 351.302(c)(2).  "{I}t is the party's responsibility to demonstrate that extraordinary circumstances exist."  *Extension of Time Limits*, 78 Fed. Reg. at 57,793-02.

Commerce determines "whether extraordinary circumstances exist based on the specific facts, taking into account whether reasonable means could have been used to file a timely request or if reasonable measures could have been taken to prevent the unexpected event from occurring."  *Id.*  "Examples of extraordinary circumstances include a natural disaster, riot, war, force majeure, or medical emergency."  *Id.*  In contrast, "insufficient resources, inattentiveness, or the inability of a party's representative to access the Internet on the day on which the submission was due" are "unlikely to be considered extraordinary circumstances."  *Id.*

     B.     <u>Commerce Lawfully Rejected Dongsheng's Untimely Separate Rate Certification</u>

Commerce provided parties with 30 days to submit separate rate applications or certifications. *Initiation Notice,* 87 Fed. Reg. at 66,276.  Several parties requested extensions to submit their respective separate rate applications or certifications.  Indeed, Xinguang, represented by the same counsel as Dongsheng, timely requested an extension to file a separate rate application.  Ironstone, Luckyroc, and Xinguang Extension Request (Nov. 28, 2022) (P.R. 28).  Commerce granted each extension request.

However, Dongsheng never requested an extension to file its separate rate certification. Instead, Dongsheng filed its separate rate certification seven days after the deadline set in the initiation notice.  Commerce rejected Dongsheng's separate rate certification because it was untimely filed, finding that "Dongsheng never requested, and Commerce never granted Dongsheng, an extension of the deadline to file its {separate rate certification}, and Dongsheng filed its {separate rate certification} after the deadline for the submission."  Commerce Rejection of Dongsheng's Separate Rate Certification at 1–2 (Jan. 17, 2023).

Additionally, Dongsheng failed to cite any "extraordinary circumstances" that prevented it from filing a timely extension request or timely filing its separate rate certification.  19 C.F.R. § 351.302(c)(2).  Dongsheng claimed that it mistakenly presumed that Commerce extended the deadline pertaining to separate rate applications and certifications to all parties.  Dongsheng Request to Accept Separate Rate Certification and Select as Mandatory Respondent at 7 (Jan. 25, 2023) (P.R. 74).  However, mere "inattentiveness" as to which firm has received an extension is not an extraordinary circumstance.  *Extension of Time Limits*, 78 Fed. Reg. at 57,793-02. Moreover, in the *ex-parte* meeting, Commerce officials questioned Dongsheng's counsel's decision to request an extension of time for Xinguang to file separate rate certification—and Luckyroc and Ironstone to file certifications of no sales during the period of review—but not for

Dongsheng, if it indeed believed that an extension for a single firm applied to all.  Memorandum

Regarding Meeting with Dongsheng Counsel (Feb. 16, 2023) (P.R. 93).  Dongsheng's counsel

"responded that it only submitted requests for its clients that needed an extension of the no sales

certification and {separate rate certification/separate rate application} deadlines." *Id.*  Thus,

Dongsheng's counsel appears to have conceded in the *ex-parte* meeting that Dongsheng did not

require an extension at the time and that no extraordinary circumstance existed.

Because no extraordinary circumstances existed, Commerce did not abuse its discretion

by enforcing its deadlines. "'Commerce has broad discretion to establish its own rules governing

administrative procedures, including the establishment and enforcement of time limits.'" *Yantai*

*Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007), *aff'd*, 300 F.

App'x 934 (Fed. Cir. 2008); *Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d

1234, 1239 (Ct. Int'l Trade 2014) (*Dongtai Peak I*), *aff'd*, 777 F.3d 1343 (Fed. Cir. 2015)

(*Dongtai Peak II*).  "Strict enforcement of time limits and other requirements is neither arbitrary

nor an abuse of discretion when Commerce provides a reasoned explanation for its decision."

*Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1331 (Ct. Int'l Trade 2015); *Neo*

*Solar Power Corp. v. United States*, 190 F. Supp. 3d 1255, 1261 (Ct. Int'l Trade 2016) (quoting

*Maverick Tube*).  Dongsheng's mere disagreement with Commerce's evaluation of its requests is

not a valid basis to overturn Commerce's determination.  *See Haixing Jingmei Chem. Prod.*

*Sales Co. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018) ("mere

disagreement" with Commerce's weighing of evidence is insufficient basis for challenge); *Gov't*

*of Argentina v. United States*, 542 F. Supp. 3d 1380, 1395 (Ct. Int'l Trade 2021) (same).

C.     Commerce Did Not Abuse Its Discretion By Rejecting Dongsheng's Untimely
       Separate Rate Application

Dongsheng does not dispute that Commerce acted within the terms of its regulation in

enforcing the deadline for submission of separate rate applications.  Instead, Dongsheng

contends that Commerce's rejection of Dongsheng's separate rate certification was an abuse of

discretion.  Donsheng Br. at 8–16.

Dongsheng first relies on *Grobest & I-Mei Industries Co. v. United States*, 815 F. Supp.

2d 1342, 1365 (Ct. Int'l Trade 2012) to assert that, if the burden on Commerce is low and the

timeliness of the proceeding is not threatened, Commerce abuses its discretion by rejecting

untimely filed documents.  *See* Dongsheng Br. 9–11.  However, Dongsheng's reliance on

*Grobest* is misplaced.  *Grobest* is not binding authority; moreover, as this Court explained in

*Trinity Manufacturing, Inc. v. United States*:

> *Grobest* involved the prior version of {Commerce's} regulation, 19 C.F.R. § 351.302
> (2012), which did not impose the current "extraordinary circumstance" requirement. . . .
> The current regulation defines how Commerce will exercise its discretion when it
> receives an untimely extension request. . . . The factors {from *Grobest*} do not mention
> {Commerce's} interest in the orderly administration of the antidumping duty law and,
> specifically, its interest in deterring late filings for which extension requests are not made
> prior to the expiration of the filing period. These interests are served by a rule confining
> the granting of such requests to extraordinary circumstances.

549 F. Supp. 3d 1370, 1378–79 (Ct. Int'l Trade 2021) (citing *Grobest*); *Extension of Time Limits*,

78 Fed. Reg. at 57,790-02 (modifying regulations to include extraordinary circumstances

standard for all segments initiated on or after October 21, 2013).  When Commerce added the

extraordinary circumstance requirement to its regulations, it stated that "{o}nly if the

Department determines that the party has demonstrated that extraordinary circumstances exist

will the Department then consider whether the party has demonstrated that good cause exists for

allowing an extension of the time limit . . . ." *Extension of Time Limits*, 78 Fed. Reg. at 57,791-

02.

Here, as Commerce lawfully found in the final results, Dongsheng's error did not

constitute extraordinary circumstances.  IDM at 25, 29.  Commerce enforced its procedural

regulations by rejecting Dongsheng's untimely filing, regardless of whether admitting the filing

would have been burdensome to Commerce.  "A court cannot set aside application of a proper

administrative procedure because it believes that properly excluded evidence would yield a more

accurate result if the evidence were considered."  *PSC VSMPO-Avisma Corp. v. United States*,

688 F.3d 751, 761 (Fed. Cir. 2012).

　　　Dongsheng next contends that this Court has rejected Commerce's attempts to impose a

"grossly disproportionate" penalty for minor technical violations that did not impact the

proceeding.  Dongsheng Br. 10 (citing *Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F.

Supp. 3d 1348, 1361 (Ct. Int'l Trade 2022)).  The facts of *Celik Halat* are distinguishable.

Nearly the entirety of the respondent's submission in *Celik Halat* was timely but for a single

exhibit, which was filed just 21 minutes after the deadline.  *Celik Halat*, 557 F. Supp. 3d at 1354.

Furthermore, the plaintiff sought an extension request citing several concerns with meeting the

deadline including "the COVID-19 pandemic, the corresponding lockdown of Turkey, Celik

Halat's office closures, and the lack of a robust work-from-home infrastructure."  *Id*. at 1358.  As

Commerce found "here, by contrast, Dongsheng Shelf's failure did not stem from a minor

technical violation," or any "extraordinary circumstances." and Dongsheng submitted its separate

rate certification seven days after the deadline without *any* supervening request for an extension

of time.  IDM at 26–27.

　　　Moreover, while Dongsheng asserts that accepting its late submission would not have

burdened Commerce, Commerce explained that:

> {T}he procedural burden at issue here does not come from reviewing and analyzing
> Dongsheng Shelf's {separate rate certification} but stems from accepting untimely
> {separate rate certifications}.  It is important for Commerce to receive {separate rate
> certifications} in a timely fashion so that it can meet its own statutory deadlines.
> Exporters and producers must timely file a{} {separate rate application/separate rate
> certification} if they want to be considered for respondent selection.  Hence, the

14

> selection, and examination, of mandatory respondents, which is the main focus of the review, cannot begin until {separate rate applications/separate rate certifications} are received.  If Commerce were to allow parties to file {separate rate applications/separate rate certifications} at various times (*e.g.*, after the applicable deadline), it would continually restart the respondent selection process and delay the start of the analytical work required.  Indeed, given the amount of work necessary in an administrative proceeding (*e.g.*, before the preliminary results of review are issued), accepting untimely {separate rate applications/separate rate certifications} would place a significant procedural strain on the agency.

IDM at 25–26.  Thus, Commerce cannot begin the respondent selection process without receiving and reviewing all the separate rate applications and certifications.  *Id.*  Given the significant time and effort Commerce expends to prepare its determinations, Commerce explained that it was burdened by the delay.  *Id.*; *Neo Solar*, 190 F. Supp. 3d at 1262–63 ("Commerce does not allege any prejudice specific to this case, but it does allege the general prejudice stemming from late filings because of the strict statutory deadlines governing its determinations."); *see also Extension of Time Limits*, 78 Fed. Reg. at 57,791 ("These modifications will diminish the cumulative impact of last-minute extension requests on the parties and the Department."); *Modification of Regulation Regarding the Extension of Time Limits*, 78 Fed. Reg. at 3,370 (explaining that adopting a "good cause" standard for untimely requests "will perpetuate the undue expenditure of Departmental resources in addressing extension requests").

    The Court of Appeals for the Federal Circuit rejected similar arguments that the delay resulting from an untimely questionnaire response and extension request did not prejudice the proceeding because there were four months until the deadline for Commerce's preliminary results.  *Dongtai Peak II*, 777 F.3d at 1352–53 (stating "the CIT has explained that '{i}t is not for {the respondent} 'to establish Commerce's deadlines or dictate to Commerce whether and when Commerce actually needs the requested information.'")).

15

Citing a litany of cases involving different circumstances, Dongsheng claims that Commerce abuses its discretion when it "rigidly applies deadlines without considering the circumstances." Dongsheng Br. at 13–14 (citing *Fine Furniture (Shanghai) Ltd. v. United States,* 865 F. Supp. 2d 1254, 1267 (Ct. Int'l Trade 2012); *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1351-52 (Fed. Cir. 2006) ; *Shelter Forest Int'l Acquisition, Inc. v. United States,* 497 F. Supp. 3d 1388, 1399 (Ct. Int'l Trade 2021); and *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1366-1367 (Ct. Int'l Trade 2019) ). Commerce did not fail to consider the circumstances in its final results. Commerce considered the specific facts of each of these cases and determined that none of these cases involved an untimely filing of a separate rate certification. IDM at 28–29.

The facts presented in *Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369 (Ct. Int'l Trade 2024) are also distinguishable from the facts here. Dongsheng Br. at 14–15. In *Cambria*, Commerce set the filing deadline at 10 a.m. *Cambria*, 705 F. Supp. 3d at 1375. The respondent misread the deadline and filed its submission at 3 p.m., presuming the filing deadline was at 5 p.m. *Id.* Commerce rejected the filing as untimely. *Id.* The Court found that Commerce, by regulation, sets a 5 p.m. default deadline for submissions, and that Commerce did not have a reasonable basis for departing from the regulation. *Id.* at 1377–78 (citing 19 C.F.R. § 351.303(b)). Without a reasonable basis, the Court held that Commerce abused its discretion by rejecting the submission. *Id.* at 1378. In particular, the Court concluded that Commerce did not engage with case-specific facts, "which involved an atypical deadline and a five-hour delay, but otherwise resulted in the submission being received within business hours on the date upon which it was due." *Id.* Here, Dongsheng's filing was days, not hours, late and Commerce did not set an "atypical" deadline.

Therefore, Commerce's determination was reasonable and within the agency's broad discretion to enforce its deadlines.  Moreover, as discussed above, Commerce's actions are governed by 19 C.F.R. § 351.302(c)—which neither contemplates nor requires that Commerce demonstrate actual burden prior to rejecting an untimely filing.

D.    Commerce's Decision In This Case Was Not Arbitrary

Dongsheng next contends that it was held to a "standard of perfection" and Commerce acted arbitrarily because it: 1) previously accepted late filings and 2) the United States has made untimely filings in proceedings before this Court.  Dongsheng Br. at 16.  However, neither of these points demonstrate a "standard of perfection."

First, Commerce's decision whether to grant an untimely filed extension request is governed by 19 C.F.R. § 351.302(c).  Commence applies 19 C.F.R. § 351.302(c) on a case-by-case basis.  *Id.* at 29; *Tau-Ken Temir LLP v. United States*, 587 F. Supp. 3d 1346, 1360–61 (Ct. Int'l Trade 2022) ("In fact, the only conclusion that can be drawn from Commerce's prior determinations is that Commerce has an administrative 'practice' to treat extensions on a case-by-case basis."), *appeal pending*, Fed. Cir. No. 2022-2204.

Dongsheng nonetheless argues that Commerce should have allowed it to submit its untimely separate rate certification because its counsel had not previously missed a deadline, and Commerce has previously treated similarly situated parties differently.  Dongsheng Br. at 16.  While there may be "some past instances . . . in which Commerce has accepted certain late filings resulting from mistakes by a law firm," such instances do not constitute a policy or practice that is binding on Commerce in this case.  *Utility Scale Wind Towers from the Socialist Republic of Vietnam: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 85 Fed. Reg. 40,226 (Dep't of Commerce

July 6, 2020), and accompanying IDM (Dep't of Commerce June 29, 2020) at 8.

Indeed, Dongsheng fails to acknowledge that Commerce has also rejected untimely filed submissions in many cases. *See, e.g., Maverick Tube*, 107 F. Supp. 3d at 1331 (citing *Dongtai Peak I*, 971 F. Supp. 2d 1234, 1242). For example, in *Jinko Solar*, this Court held that "Commerce reasonably rejected one plaintiff's {separate rate certification} response to its supplemental questionnaire as untimely" when the plaintiff failed to respond to Commerce's deadline and failed to demonstrate "extraordinary circumstances" existed to warrant an untimely filed extension request. *Jinko Solar Imp. & Exp. Co. v. United States*, 701 F. Supp. 3d 1367, 1376–77 (Ct. Int'l Trade 2024) (further finding challenges to the "extraordinary circumstance" requirement and 19 C.F.R. § 351.302(c) as arbitrary and capricious to lack merit.).

Commerce has stated its intent to "adhere strictly to its regulations, and apply them uniformly across all cases." *See Wind Towers from Vietnam* IDM at 9; *see also* Dongsheng Br. at 16–17. A practice of leniency with certain counsel "would be inconsistent with Commerce's regulations and practice." *Wind Towers from Vietnam* IDM at 8. Dongsheng's prior actions (*e.g.*, timely filing submissions in other segments of this proceeding) have no bearing on the lawfulness of Commerce' actions in this review. IDM at 26. Dongsheng has participated in the entirety of this proceedings, during which Commerce's procedural requirements have remained unchanged. *Id.* Commerce supplied Dongsheng with sufficient notice of the need to provide, and importance of, a timely separate rate certification. *Id*.

Although Dongsheng notes that the United States has previously failed to timely file submissions before this Court, this Court's rules are irrelevant to Commerce's own authority to fashion its rules of procedure and enforce administrative deadlines. Nonetheless, the regulatory standard for accepting out of time filings before this Court differs from the standard before

18

Commerce.  As stated above, Commerce accepts untimely filings if the party requests an extension and demonstrates "extraordinary circumstances" prevented a timely filing consistent with 19 C.F.R. § 351.302(c).  Before this Court, Rule 6(b)(1)(B) provides that out-of-time filings are permitted when the movant demonstrates "excusable neglect."  Therefore, Dongsheng has not shown that Commerce acted arbitrarily in enforcing its deadlines.

III.    Commerce's Decision to Not Select Dongsheng as a Respondent was Lawful and Supported by Substantial Evidence

Next, Dongsheng challenges Commerce's determination not to select Dongsheng as a mandatory respondent as contrary to law.  Dongsheng Br. at 18–19.  As support, Dongsheng argues that it was the largest exporter during the period of review, and thus should have been selected as a mandatory respondent.  *Id*. at 20 (citing 19 U.S.C. § 1677f-1(c)(2)).  However, the statute does not specify *how* Commerce is to determine the largest exporters for individual examination.  Commerce acted within its discretion when it established a threshold process that parties must follow to demonstrate their eligibility for a separate rate.  Having failed to follow that process, Dongsheng was deemed part of the China-wide entity rather than an individual "exporter" for purposes of calculating an individual weighted-average dumping margin.  *See generally China Mfrs. Alliance, LLC v. United States*, 1 F.4th 1028, 1032 (Fed. Cir. 2021).[2]

Dongsheng similarly misinterprets the process by which Commerce selects voluntary respondents.  Under 19 U.S.C. § 1677m(a)(1)(A), an initial step for consideration of a party to be considered as a voluntary respondent is the submission to Commerce of the "information requested . . . by the date specified."  Furthermore, as Commerce stated in its IDM, citing 19

---

[2]  For similar reasons, Dongsheng's argument that its filing of a separate rate certification and respondent selection comments demonstrated its "willingness to be considered in the mandatory selection" fails.  Dongsheng Br. at 20.  Because Dongsheng did not comply with Commerce's threshold procedural requirements, it was deemed to be part of the China-wide entity and ineligible for an individual examination as a mandatory respondent.

C.F.R. § 351.204(d)(2), "'{a} voluntary respondent accepted for individual examination . . . will be subject to the same requirements as an exporter or producer initially selected by {Commerce} for individual examination . . . .'" IDM at 30.  Here, Dongsheng failed to file a timely separate rate certification.  Thus, Commerce was unable to determine that Dongsheng was sufficiently independent from government control of its export activities to be entitled to a separate rate.  *Id.* at 30–31.  Thus, Dongsheng's failure to timely submit its separate rate certification, a necessary step to be considered as mandatory respondent in the administrative review, prevented its participation in the proceeding as a voluntary respondent.  *See Certain Carbon and Alloy Steel Cut-To-Length Plate from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 82 Fed. Reg. 8,510 (Dep't of Commerce Jan. 26, 2017), and accompanying IDM at 7 (rejecting party's attempt to file a voluntary questionnaire response because the party failed to comply with 19 U.S.C. 1677m(a)(1)(A) and demonstrate it was eligible for a separate rate, and thus could not be considered as a voluntary respondent).

Dongsheng also contends that the amount of time Commerce took to reject Dongsheng's Section A questionnaire response was unreasonable and supports the claim that Commerce should accept the untimely separate rate certification.  Dongsheng Br. at 24–25.  Commerce noted that, "regardless of the timing of the rejection, Dongsheng could not have been considered for voluntary respondent treatment" because it did not timely submit a separate rate certification—a requirement to be considered as a potential respondent.  IDM at 31.  Dongsheng cites no authority to support its claim that Commerce should have accepted this submission and excused Dongsheng's requirement to timely submit its separate rate certification.  Dongsheng Br. at 25.  This "court's mandate is to sustain Commerce's determinations unless they are 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"

*MTZ Polyfilms, Ltd. v. United States*, 659 F. Supp. 2d 1303, 1309 (Ct. Int'l Trade 2009) (citing

*Carpenter Tech. Corp. v. United States*, 510 F.3d 1370, 1373 (Fed. Cir. 2007) (quoting 19 U.S.C.

§ 1516a(b)(1)(B)(i)).  Dongsheng's bare assertions place the burden of explaining and supporting

their arguments on Commerce, and this Court should not entertain them.[3]

IV.   Commerce Did Not Rely on 19 U.S.C. § 1677e(a) to Find That Dongsheng Is Part of the
       China-Wide Entity

   Lastly, Dongsheng claims that Commerce's "application of adverse facts available was

not supported by law or substantial evidence."  Dongsheng Br. at 21.  However, Commerce

made no such finding.

   Indeed, as Dongsheng acknowledges, Commerce did not apply adverse facts available

here.  Dongsheng Br. 21 (citing IDM at 27).  Commerce applies the facts otherwise available

when an interested party fails to provide the information by the deadline or when necessary

information is unavailable.  *See* 19 U.S.C. § 1677e(a)(1)–(2).  Commerce may also apply an

adverse inference in selecting among the facts otherwise available if it "finds that an interested

party has failed to cooperate by not acting to the best of its ability to comply with a request for

---

[3] We note that Dongsheng cites various cases where parties purportedly did not file a
separate rate certification by the deadline but were subsequently selected as a mandatory
respondent.  Dongsheng Br. at 19–20.  However, neither case supports Commerce accepting an
*untimely* filed separate rate certification.  In the first case, CRE8 Direct (Ningbo) was selected as
a mandatory respondent after filing its "quantity and value response" and, although it received an
extension, CRE8 Direct (Ningbo) did not file a separate rate application and Commerce thus
treated it as part of the China-wide entity.  *Paper File Folders From the People's Republic of
China: Preliminary Affirmative Determination of Sales at Less Than Fair Value*, 88 Fed. Reg.
31,486 (Dep't of Commerce May 17, 2023) and accompanying preliminary decision
memorandum at 8.  Next, in *Cast Iron Soil Pipe Fittings from China*, and contrary to
Dongsheng's claim that Commerce did not consider the timeliness of separate rate applications,
Commerce stated that it "requires that respondents submit a response to both the Q&V
questionnaire and the separate-rate application by their respective deadlines in order to receive
consideration for separate-rate status."  *Cast Iron Soil Pipe From the People's Republic of
China: Initiation of Less Than-Fair Value Investigation*, 83 Fed. Reg. 8,053, (Dep't of
Commerce Feb. 23, 2018); *see also* Dongsheng Br. at 19–20.

information." 19 U.S.C. § 1677e(b)(1).  Here, Commerce did not apply adverse facts available.

Rather, it "simply treated {Dongsheng} as part of the China-wide entity for failing to

demonstrate its eligibility for a separate rate."  IDM at 27.

Dongsheng argues that the China-wide entity dumping margin is not an accurate

representation of Dongsheng's prior cooperation and is significantly higher than the rates

Dongsheng received in prior administrative reviews.  Dongsheng Br. at 22–24.  Dongsheng

maintains that Commerce must consider its prior cooperation in various segments of this

proceeding, and not apply a "standard of perfection" in not accepting its separate rate

certification.  *Id.* at 21–22 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381-83

(Fed. Cir. 2003), and *Cambria*, 705 F. Supp. 3d at 1380).

However, these cases pertain to Commerce's application of adverse facts available,

which is not at issue here.  Here, Commerce found that Dongsheng failed to rebut the

presumption of state control and therefore considered Dongsheng to be part of the China-wide

entity, assigning Dongsheng the China-wide entity dumping rate.  Commerce's decision is

consistent with its well-established practice to apply the country-wide rate to a cooperative

exporter or producer that does not timely submit a separate rate certification and therefore rebut

the presumption of state control.  *See China Mfrs. All., LLC v. United States*, 1 F.4th 1028, 1040

(Fed. Cir. 2021).  Moreover, "the fact that a country-wide rate may have been calculated using

{adverse facts available} does not change its applicability to a {non-market economy} entity that

cooperated, but ultimately failed to qualify for a separate rate."  *Diamond Sawblades Mfrs. Coal.*

*v. United States*, 866 F.3d 1304, 1312 (Fed. Cir. 2017).  Therefore, Dongsheng "lost its ability to

argue for the separate rate when it missed the deadline to return its {separate rate certification}."

*Jinko Solar*, 701 F. Supp. 3d at 1378.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's final results in their entirety and enter final judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Laurel D. Havens III
LAUREL D. HAVENS III
Trial Attorney
U.S. Dept. of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0309
E-mail: Laurel.Havens@usdoj.gov

OF COUNSEL:
JESUS N. SAENZ
Senior Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, D.C.

January 28, 2025                    Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains approximately 6,519 words, including text, footnotes, and headings, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.


<u>/s/ Laurel D. Havens III</u>