UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| NANJING DONGSHENG SHELF MANUFACTURING CO., LTD. ) ) ) | |
| Plaintiff, ) | Court No. 24-00085 |
| v ) | |
| UNITED STATES, ) ) | |
| Defendant, ) | |
| and ) | |
| COALITION FOR FAIR RACK IMPORTS ) Defendant-Intervenor. ) | |

**PLAINTIFF'S REPLY BRIEF**

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**INTER-GLOBAL TRADE LAW GROUP**
Suite 1101
1156 Fifteenth Street., N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

Dated: March 17, 2025

## TABLE OF CONTENTS

I. The Department Abused its Agency Discretion in Rejecting Dongsheng's SRC .... 1

II. The Department's Determination Not to Select Dongsheng, as the Largest Exporter, as a Mandatory Respondent and Rely on Dongsheng's Timely Section A is Contrary to Law ............................................................................................... 10

III. The Department had No Basis to Resort to AFA and Must Minimum Apply Dongsheng ................................................................................................................. 13

IV. Conclusion and Prayer for Relief ........................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361 (April 2020)..................................14

*Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369, 1378 (Ct. Int'l Trade *2024)*.........13-14

*Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1348 (February 15, 2022).....3-4

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012) ..................................................................................................14

*Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003)................2

*Dongbu Steel Co., Ltd. v. US*, 635 F. 3d 1363 (Fed. Cir. 2011). ....................................12

*Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343 (Fed. Cir. 2015)........................ 7-8

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) ..................................14

*Ferrostaal Metals GmbH v. United States*, 518 F. Supp. 3d 1357, 1371-72 (Ct. Int'l Trade 2021) ........................................................................................................3

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319  (Fed. Cir. 2010).........................14

*Grobest & I-Mei Industrial (Vietnam) Co., Ltd. v. United States*, 815 F. Supp.2d 1342 (Ct. Int'l Trade 2012) ........................................................................................ 2-6

*Grupo Acerero S.A. de C.V. v. United States*, 698 F. Supp. 3d 1320 (Ct. Int'l Trade 2024) ...........3

*Hoa Phat Steel Pipe Co., Ltd. v. United States*, 2025 Ct. Intl. Trade LEXIS 10..............................3

*Jinko Solar Imp. & Exp. Co. v. United States*, 701 F. Supp. 3d 1367 (Ct. Int'l Trade 2024)...... 8-9

*Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339, 1349-50 (Ct. Int'l Trade 2024) ............3

*Mueller Comercial De Mexico v. United States*, 753 F.3d 1227 (Fed. Cir. 2014) .........................14

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995)..............................1

*Trinity Mfg. v. United States*, 549 F. Supp. 3d 1370 (Ct. Int'l Trade 2021)............................... 7-8

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) .............14

**STATUTES**

Nanjing Dongsheng Shelf Manufacturing Co., Ltd., ("Dongsheng" or "Plaintiff"), hereby files its reply brief in response to Defendant and Defendant-Intervenor's briefs.  *See* U.S. Brief (April 10, 2024); Pet. Brief (April 10, 2024); *Certain Steel Racks and Parts Thereof From the People's Republic of China: Final Results of the Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022*, 89 Fed. Reg. 25,235 (April 10, 2024), **PR263**, *incorporating* Issues and Decision Memorandum ("IDM"), **PR262**.  The Department's rejection of Donsheng's SRC and Section A questionnaire response was an abuse of discretion.  Further, the Department's decision not to select Dongsheng as a mandatory respondent and the effective application of AFA by assigning Dongsheng the PRC-entity rate is contrary to law.

I.      **The Department Abused its Agency Discretion in Rejecting Dongsheng's SRC.**

Dongsheng's SRC was rejected from the record for being filed 7 days late, but on the extended deadline for the SRCs for most of the parties in the review.  Dongsheng requested that the Department accept the SRC out of time.  However, the Department rejected this request, and Dongsheng's multiple renewed requests, stating that the circumstances that led to Dongsheng's late filing and the request for an extension out of time did not meet their definition of "extraordinary circumstances."  Therefore, in accordance with its regulation, the Department stated it was not accepting Dongsheng's SRC out of time.  As discussed in the initial briefing, the Department's regulation concerning out of time extension requests changed in 2013, making the standard more stringent and requiring "extraordinary circumstances."  However, it is still well-established that "a regulation which is not required by statute may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995).  An abuse of discretion "occurs where the decision is based on an erroneous interpretation of the law,

1

on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005)

The Department's regulation on whether to accept untimely submissions is not required by statute.  Further, the Department's amended regulation cannot overcome or contradict statutory mandates, such as to administer the antidumping law in a manner that is remedial and non-punitive.  In response to Dongsheng's briefing on these matters, and citations to cases that the Department must still consider the particular facts and weighing of burdens, the Defendant and Defendant-Intervenor are largely dismissive of the facts and arguments.  Defendant and Defendant-Intervenor cite to the change in statute and differentiate facts in the cases cited from the one at hand.  U.S. Br. at 12-16; Pet. Br. at 18-21; compare Dongsheng R56.2 Br. at 9-10, 14-15.  However, these cases all still stand for the legal premise that the Department must consider the relevant facts before rejecting a filing out of time.  In this case, the Department failed to weigh the relevant facts that would have warranted a waiving of the regulatory "extraordinary circumstances" requirement.  Thus, the Department abused its discretion.

Defendant and Defendant-Intervenor largely ignore the *Grobest* factors due to the case being adjudicated under the former regulation.  However, in *Grobest*, the Court did not ground its holding that the Department abused its discretion in rejecting the respondent's late-filed submission in the Department's misapplication of the "good cause" standard that was in effect prior to the 2013 revised regulation. Rather, the Court found that the Department's discretion in rejecting untimely filings is necessarily limited by the remedial, non-punitive, purpose of the AD statute, which requires Commerce to consider the burden of accepting the late submission and the need for finality in the final results stage. *See Grobest*, 815 F.Supp.3d at 1365 (stating that

2

the remedial purpose of the AD statute requires that it to balance the interests of accuracy and fairness against the burden placed on Commerce in accepting the late-filed submissions where Commerce exercises its discretion to set and enforce its deadlines).  Thus, this finding is still applicable to any intervening regulation on late submissions.

   Indeed, a growing number of cases at this Court since the 2013 revision adding the "extraordinary circumstances" to the regulation have still considered the *Grobest* factors in determining whether the Department's properly rejected an untimely filing.  *See, e.g., Grupo Acerero S.A. de C.V. v. United States*, 698 F. Supp. 3d 1320, 1332 (Ct. Int'l Trade 2024) (citing *Grobest* in its discussion of accepting untimely filings); *Matra Ams., LLC v. United States*, 681 F. Supp. 3d 1339, 1349-50 (Ct. Int'l Trade 2024) (citing *Grobest* in its discussion of accepting untimely filings); *Ferrostaal Metals GmbH v. United States*, 518 F. Supp. 3d 1357, 1371-72 (Ct. Int'l Trade 2021) (discussing *Grobest* in its discussion of accepting untimely filings); *Hoa Phat Steel Pipe Co., Ltd. v. United States*, 2025 Ct. Intl. Trade LEXIS 10 (discussing *Grobest* in its discussion of accepting untimely filings).

   Defendant and Defendant-Intervenor claim that the circumstances of these cases were more extreme, yet nonetheless they stand for the precedent that *Grobest* and the particular facts are still relevant.  For example, *Celik Halat* is minimally distinguishable from this appeal because it involved the filing of a submission only a few hours late.  However, similarly to this case, the late filing was due to a calendaring error relying on normal Department practice.  *Celik Halat*'s ruling is directly applicable here, where while acknowledging the Department's discretion in determining what constitutes extraordinary circumstances, the Court cautioned the Department against "impos[ing] a grossly disproportionate penalty for what essentially was a minor technical violation that had no discernible effect on the investigation. While Commerce

3

has the authority to establish and enforce its own regulations, it is not free to apply its 'extraordinary circumstance' rule in so harsh a way as to produce an unjust and punitive result." *Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1348, 1361 (February 15, 2022). The Department has imposed a Draconian penalty on Dongsheng with a margin of 144.50% for the slightly late filing of an SRC, essentially a mere form, on the extended deadline for the other parties's SRCs in any event.

      The other cases citing *Grobest* may have had different facts of missing deadlines due to technical or medical issues, but the key fact is that the *Grobest* weighing of burdens and specific facts remainsrelevant.  The Department did not analyze such burdens and factors in rejecting Dongsheng's SRC.  As explained in Dongsheng's opening brief, in *Grobest*, the respondent filed its separate rates certification 95 days late.  There, the court held that the interest of fairness outweighed the burden placed on the Department, relying primarily on three facts: (1) the burden of reviewing this particular type of submission is not great, (2) although untimely submitted, the submission was still made more than seven months before the preliminary determination, and (3) the exporter made every effort to correct the error as soon as it became aware of the omission. The court rightly concluded that the Department's rigid application of its deadline constituted an abuse of discretion.  The Court should come to the same conclusion here. Considering the *Grobest* factors, accepting Dongsheng's late filing of its SRC would not have burdened the Department, while the harm to Dongsheng of refusing to accept this SRC was extraordinary and penal.  Dongsheng filed its SRC only 7 days later, a full 292 days before the Preliminary Results and on the same precise deadline that the majority of the other parties filed their separate rate certifications.

      To the extent that the United States attempts to address burdens in their response brief,

which again is not the same as whether the Department analyzed this in their decision, the United States' consideration is not complete and does not comport with the facts. The United States attempts to say there was a burden on the Department in considering Dongsheng's SRC because "Commerce cannot begin the respondent selection process without receiving and reviewing all separate rate applications and certifications." U.S. Br. at 14-15. Similarly, Defendant-Intervenor asserts that accepting Dongsheng's SRC would "set a dangerous precedent and jeopardize Commerce's ability to meet its own statutory deadlines." Def-Int. Br. at 23. But Dongsheng submitted its SRC on the exact same deadline as the companies that the Department did select as mandatory respondents. Therefore, how is this a burden? *See also* Dongsheng R565.2 br. at 9-13 (discussing these factors in depth). We also clarify that when the Department said it would start considering respondent selection after receiving the SRCs/SRAs, this certainly did not mean that the Department would fully conduct and complete its substantive separate rate analysis before starting the mandatory selection process. The Department completes that with the Preliminary Results, and, as explained in the opening brief, for the mandatory respondents the Department actually relies on the Section A and not the SRC/SRA. Thus, all the Department considers in the filing of the SRC/SRA filing with respect to respondent selection is to see which companies filed SRCs. Even if the Department had received Dongsheng's SRC on the initial deadline and then other exporters' SRC/SRA a week later on the extended deadline, the Department would still have had to wait until the final SRC/SRA date to perform the mandatory selection at the same time. There would be no extra burden with regards to respondent selection for the Department in accepting Dongsheng's SRC filed on the same date as several other exporters.

  Also, in considering the reasons that led to the missed deadline and Counsel's efforts to

5

correct them, the United States discounts Counsel's explanation that it had presumed the SRC deadline was extended for all parties, arguing this does not comport with the fact that Counsel filed an extension for three companies instead of just one (relying that it would then apply to all). This misunderstands normal Commerce practice. Dongsheng did not need an extension for this deadline at the outset. Only certain other companies represented by same Counsel did, so Counsel only requested an extension for those companies. It would not have been factual in the request for an extension, if Counsel had not included all the companies that needed the extension or included companies that did not need the extension. Nonetheless, for the overwhelming majority of cases for many years, even when any counsel only requested an extension for some companies, the deadline was extended for all companies. Indeed, this makes sense given the Department cannot completely consider the pool of cooperating companies for mandatory respondents election until all SRA/SRC deadlines have been filed. Relying on this normal practice, Counsel made a calendaring mistake. Counsel has fully acknowledged that it made a mistake in calendaring. The fact that Commerce had a practice to extend the deadline for all parties was the reason for this mistake. Since this case, Counsel has revised its calendaring practice and will always maintain the original SRA/SRC deadline in their calendar to triple-check that it applies to all parties. We note that the Department has continued to extend SRA/SRC deadlines for all parties in the overwhelming number of reviews/investigations.

In response to yet other cases cited by Dongsheng where the Court has found the rejection of untimely filed information was unlawful, the United States dismisses their relevance because "none of these cases involved an untimely filing of a separate rate certification." U.S. Br. at 16. The cases cited involved the rejection of substantial questionnaire responses and information on the nature of inputs. Dongsheng R56.2 Br. at 14. The submission of an SRC, on

6

the same deadline as other SRCsto be selected mandatory respondents, is far less critical than these other deadlines in other cases. An SRC is a mere form of checkmarks and confirmations that nothing in a company's ownership or independent negotiations has changed since the prior review. Dongsheng had filed this same precise form in the last two reviews, even the two one page exhibits with their business licenses and foreign trade registration were the same. This document and the time it was submitted is far less burdensome and significant to consider than the precedent cited, where the Court still ordered Commerce to consider the circumstances before rejecting the submissions. Commerce did not truly consider the circumstances. But United States' surmise that Counsel did not really believe this practice because it did not request an extension for only one company in anticipation that it would apply to all avoids the point and the practice.

Instead of addressing this caselaw and the particular factors of the case, the Defendant and Defendant-Intervenor rely on limited alternative caselaw and the concept that the Department has generalized authority to enforce its deadlines in all circumstances without abusing its discretion. U.S. Br. at 13-15; Pet. Br. at 18-19 (both citing to *Dongtai Peak* and *Trinity Manufacturing*). These cases do not uphold an unchecked authority, and also present very different facts than present here. The Court's holding in *Dongtai Peak Honey* is limited to the notion that the Department did not abuse its discretion in declining to consider a mandatory respondent's request to accept an untimely supplemental questionnaire response when the respondent had actual, acknowledged notice of the deadline but failed to request a timely extension of time in advance of the deadline. *Dongtai Peak Honey*, 777 F.3d at 1353. Further, the questionnaire data was critical to calculating other AD rates in the proceeding and the Department found that the missing information was particularly important because it had found

7

in prior reviews that the respondent's sales to the United States were not bona fide, which is a complex consideration requiring a careful evaluation of the totality of the circumstances. None of these facts are present here. Counsel was not aware at the time that it had missed the deadline, and the information in the SRC was not critical to a complicated analysis, and was actually a simple "yes or no" to certain questions. Further, the SRC never would have even been relied on ultimately. As explained in the opening brief, Dongsheng would have been selected as a mandatory respondent and the Department would have relied on Dongsheng's Section A response and not this SRC. *Trinity Manufacturing* also dealt with an extremely different type of deadline, it was a statutory deadline not to revoke an Order. This type of deadline can also not be extended and thus could never have been wrongly calendared. In contrast, Dongsheng missed a questionnaire deadline by one week that was otherwise extended for the other parties. The SRC is not a statutory deadline, and is actually a deadline frequently extended.

Defendant and Defendant-Intervenor also rely heavily on *Jinko Solar,* which also dealt with a late filing SRC, though we submit the facts remain different. U.S. Br. at 18, 22; Pet. Br. at 14, 22, 29. First, we note that this opinion is not controlling and respectfully disagree with the Court's upholding that a single very stringent standard of extraordinary circumstances is lawful. We have cited to examples of other precedent before and after this case where this Court has disagreed and found the *Grobest* weighing of burdens are relevant in considering whether Commerce's adherence to the "extraordinary circumstances" standard was lawful in the particular scenario.

Nonetheless, the facts at hand are also different than *Jinko Solar* in a meaningful way. In *Jinko Solar*, Trina filed an SRC for only some of its related companies, then the Department issued a supplemental questionnaire asking Trina to file additional SRCs. Trina did not file

anything on this deadline, but 49 days later asked for an out of time extension. The Court found this was "general inattentiveness." Further, Trina tried to file this data much later in the proceeding. In the case at hand, while there was a calendaring error, the deadline was not missed all together but was rather mistakenly thought to be extended. The late filing was also not late in the proceeding, but on the same precise deadline that the majority of the parties filed their SRC response. The Department has still not properly considered the lack of burden on the Department and the extreme draconian penalty on Dongsheng.

Lastly, the United States claims it does not require a "standard of perfection." U.S. Br. at 17. But this is precisely what occurred in this case. The United States explains that under 19 CFR 351.302(c), it determines on a case by case basis whether to grant untimely filings. Then explains that it has accepted some late filings and not others, but intends to adhere strictly to deadline and apply them uniformly across all cases and that past practice of never missing a deadline is not relevant. *Id*. at 18. This is precisely requiring a standard of perfection. The Department has essentially said that a company or Counsel can never make a reasonable error. This allows for no weighing of burdens compared to consequences, and no actual "case by case" analysis. Counsel cited to numerous examples where the Department has missed its own deadlines. Defendant-Intervenor's Counsel also just missed a deadline before this Court, asking for leave to file a motion to intervene some two months after the deadline due to inadvertence. *See Ancientree v United States*, CIT 24-223, ECF doc 14. Yet, in response to pointing out this arbitrary behavior, the United States dismissed the comparison because the Court has a different standard than the Department. Indeed, the Court actually lawfully considered the case by case circumstances, but the Department has enacted its "extraordinary circumstances" regulation in an inflexible way that allows nothing short of an actual unavoidable emergency. This is arbitrary

9

and not reasoned decision making.  Moreover, we note that among the examples provided in Dongsheng's opening brief, were examples of the Department missing its own deadlines at Commerce, not just at Court.  Yet, there are no consequences for the Department.

Dongsheng's inadvertent error was in filing its SRC seven days later and in line with a broad extension for six other exporters' SRCs.  It was arbitrary for the Department to hold Dongsheng to a standard of perfection while not holding itself or its own legal representatives to the same standards.  A standard of perfection no matter the circumstances is *per se* unreasonable, arbitrary and capricious.  Further, following the precedent in *Cambria* and other caselaw, the Court should find that the Department must engage with the particular facts of this case.  The Court should further find that given the facts of this case, the Department abused its discretion not to accept Dongsheng's SRC slightly out of time in the context of that phase of the case and of the long course of months to go before its preliminary results were due under normal and actual practice.

**II.     The Department's Determination Not to Select Dongsheng, as the Largest Exporter, as a Mandatory Respondent and Rely on Dongsheng's Timely Section A is Contrary to Law.**

The Department is directed by statute to rely upon the largest exporters to calculate antidumping duty margins.  *See* Respondent Selection Memo (January 23, 2023) (discussing the statutory obligations for selection) **PR64**.  The statute directs the Department to either rely on a statistically valid sample or the "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that the administering authority determines can be reasonably examined."  19 U.S.C. 1677f-1(c)(2).  The Department violated this statutory mandate when it refused to rely upon Dongsheng, the largest exporter.  In response to Dongsheng's arguments, Defendant and Defendant-Intervenor dismiss the arguments stating the

10

Department could not rely upon Dongsheng after Dongsheng untimely filed its SRC. U.S. Br. at 19-21; Pet. Br. at 24-27.

However, it is certainly not true that "Commerce could not determine that Dongsheng was independent from government control." U.S. Br. at 20. The Department had Dongsheng's SRC, filed on the same deadline as the companies it did select, which established this. Again, it was a short document of check-boxes. It was very simple for Commerce to ascertain from this that nothing had changed for Dongsheng, and thus Commerce's finding of separateness from State control for the last several reviews manifestly remained unchanged. Moreover, there could not have been a concern that Dongsheng would not cooperate because it had filed CBP comments wanting to be selected, and then filed an SRC on what it believed was the deadline. Dongsheng did everything it normally would have needed to do to be selected, and the Department knew this. The Department knew the late filing was a calendaring error only, and did not have any impact on Dongsheng's separateness finding from what was on the record or Dongsheng's desire to be selected. All of these facts were also re-stated in multiple filings and meetings at the Department.

Moreover, Defendant and Defendant-Intervenor fail to distinguish two examples, including one contemporary to this review, of when the Department selected respondents that had not filed an SRA/SRC. *See* Dongsheng R56.2 Br. at 19-20. Defendant-Intervenor notes that the cases involved the Department relying upon Q&V data for respondent selection instead. Def-Int. Br. at 17. This has no meaningful difference. For this review, the Department relied upon CBP data[1], and based upon this data, Dongsheng should have been selected. Further, in

---

[1] We note that in investigation, the Department will normally rely upon Q&V data for respondent selection in AD proceedings but then rely upon CBP data in reviews, since by reviews the CBP data will

11

both the cases cited by Dongsheng, the initiation notice specified that "Commerce requires that companies from China and Vietnam submit a response both to the Q&V questionnaire and to the separate rate application by the respective deadlines in order to receive consideration for separate rate status." *Cast iron Soil Pipe from China*, 83 Fed. Reg. 8053, 8056 (February 23, 2018); Paper File Folders from China, 87 Fed. Reg. 67441, 67446 (November 8, 2022). Nonetheless, the Department selected CRE8 Ningbo in *Paper Plates* and Hengtong Castings in *Cast Iron Soil Pipe* as a mandatory respondent, which requires separate rate status to obtain a margin, notwithstanding each of their failures to submit an SRA. Applying one rule to one party and applying the inverse rule to another party, such as here (particularly when Dongsheng did file its SRC and did ask to be a mandatory respondent), is arbitrary and capricious. *Dongbu Steel Co., Ltd. v. US*, 635 F. 3d 1363 (Fed. Cir. 2011).

    The Department has a mandate to rely upon the largest exporters, which included Dongsheng in this review. The Department's statement in the initiation notice that any exporter or producer "want to be considered in the respondent selection", they must file a timely SRA or SRC, cannot overcome this statutory direction. 87 Fed. Reg. 66275, 66276 (November 3, 2022). This added language in the initiation notice could be reasonable, but only to determine willingness to be considered in the mandatory selection[2]. However, Dongsheng made

---

be more accurate to the subject merchandise because entries must be declared "Type 3" with the AD number of the case. This has no impact on the separate rate filing requirements for exporters.

[2] For example, it could be a reasonable implementation of the statute for the Department to rely on the largest exporters that would cooperate and submit questionnaire responses. There are companies that appear in the CBP data that simply never make an appearance or respond to any questionnaires. Thus if the Department had to select them and wait for the first questionnaire deadline to pass, and see that they still did not file a questionnaire, before it could go on to select a replacement, this could be an unreasonable administrative burden. But that is certainly not the case here with Dongsheng. The Department did not consider respondent selection until the parties had all filed their SRC on December 12, which is the same date that Dongsheng filed its SRC. And as already described multiple times on the

abundantly clear on this record that it wanted to be selected as a mandatory respondent and would cooperate, even filing a voluntary section A response. Dongsheng has always fully participated through three prior proceedings, and everything in this review established Dongsheng's intention and desire to participate and be selected in this administrative review. The Department certainly was not burdened by missing any information concerning Dongsheng to impact respondent selection. In contrast, as discussed above, the harm to Dongsheng is substantial and irreparable. As such, the Department's determination not to accept Dongsheng's Section A questionnaire response and select Dongsheng as a mandatory or voluntary respondent is also unsupported by the record.

**III.    The Department had No Basis to Resort to AFA and Must at Minimum Apply the Separate Rate to Dongsheng.**

Similarly, Defendant and Defendant-Intervenor also dismiss Dongsheng's arguments on AFA, arguing that since Dongsheng failed to timely file its SRC, the Department could not determine that Dongsheng was separate and therefore Dongsheng is part of the PRC-entity. U.S. Br. at 21-23; Pet. Br. at 27-31. The United States tries to differentiate between AFA and PRC-entity rate. U.S. Br. at 22. But they are in effect the same here. The AFA rate and PRC-entity rate are identical. Commerce has found that Dongsheng is part of the PRC-entity rate because of the Department's rejection of the SRC. Dongsheng received this rate due to its failure to provide requested information. 19 U.S.C. § 1677e(a)(2) (the basis for applying AFA is withholding information, failing to provide information, or impeding a proceeding).

The only reason the rate in Cambria was not also the entity rate, was that the case took

---

record, Dongsheng went on to request multiple times that it be selected and filed a full Section A response.

13

place in India where there is no state-entity rate[3]. The rate applied to the respondent was the petition calculated rate, precisely as what happened to Dongsheng. Thus, the Court's consideration in *Cambria* that the application of AFA was unsupported by substantial evidence is relevant. *Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369, 1380 (Ct. Int'l Trade 2024) (noting that the respondent had complied with all prior deadline and quoting *Nippon Steel* to find that "a single late response is not determinative that a respondent has not acted to the "best of its ability" to cooperate because "mistakes sometimes occur.").

The Department's application of the PRC-entity rate equates to a finding of total AFA for failure to cooperate at the very outset of the proceeding contrary to Dongsheng's cooperation and the Department's policy goals. *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012) ("The purpose of the adverse facts statute is to provide respondents with an incentive to cooperate with Commerce's investigation, not to impose punitive damages."); *Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361, 1374 (April 2020) (Commerce must balance the policies of accuracy and deterrence, or risk potentially undercutting "the cooperation-promoting goal of the AFA statute.") (*quoting Changzhou Wujin*, 701 F.3d at 1378; *citing Mueller*, 753 F.3d at 1234).

The punitively high rate also bears no rational relationship to Dongsheng's anticipated margins. Dongsheng had been a mandatory respondent in the investigation and two prior reviews, covering the time period from October 2017 to August 2021, with all margins under 20%. The margin assigned to Dongsheng in this review was instead 144.50 percent from the petition. This is not an accurate, reasonable, or contemporaneous margin for Dongsheng. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1380 (Fed. Cir. 2013) (the

---

[3] Only non-market economy countries have a state-entity rate because of the presumption of state control. But the state-entity rate and the AFA rate are the same rate and serve the same function.

14

rate assigned "was required to reflect commercial reality and thus, to be 'a reasonably accurate estimate' of actual dumping rates… Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin.") (*quoting Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1324 (Fed. Cir. 2010)).

The statutory goals of accuracy and fairness are severely undermined by applying the China-wide rate to Dongsheng. Dongsheng's rate in the most recently completed review prior to this was 13.88 percent. This is very similar to the separate rate in this review at hand, 12.73%. This corroborates the representativeness of the separate rate to Dongsheng. The Court should find that the Department must at a minimum accept Dongsheng's SRC or voluntary Section A and assign Dongsheng a separate rate.

### IV.   Conclusion and Prayer for Relief

In light of the foregoing, the Department's *Final Results* were not supported by substantial evidence or in accordance with the law. Plaintiff respectfully requests that the Court remand this case for redetermination of the issues presented in this brief or rule directly that Commerce assign Dongsheng the "separate" rate based on its otherwise timely relevant submissions.

                                                Respectfully submitted,

                                                 /s/ Gregory S. Menegaz
                                                Gregory S. Menegaz
                                                Alexandra H. Salzman
                                                Vivien Jinghui Wang
                                                **INTER-GLOBAL TRADE LAW GROUP**
                                                Suite 1101
                                                1156 Fifteenth Street., N.W.  20005
                                                Tel: (202) 868-0300
                                                email:  gmenegaz@igtlaw.com
Date: March 17, 2025                          *Counsel to Plaintiff*

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **4,800** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**INTER-GLOBAL TRADE LAW GROUP**
Suite 1101
1156 Fifteenth Street., N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*