Slip Op. 25-76

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **NANJING DONGSHENG SHELF MANUFACTURING CO., LTD.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | Before: Jennifer Choe-Groves, Judge |
| Defendant, | Court No. 24-00085 |
| and | |
| **COALITION FOR FAIR RACK IMPORTS,** | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Granting Plaintiff's Motion for Judgment on the Agency Record and remanding for Commerce to take further action in accordance with this Opinion.]

Dated: June 16, 2025

Gregory S. Menegaz, Alexandra H. Salzman, and Vivien J. Wang, The Inter-Global Trade Law Group PLLC, of Washington, D.C., for Plaintiff Nanjing Dongsheng Shelf Manufacturing Co., Ltd.

Tara K. Hogan, Assistant Director, and Laurel D. Havens, III, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With them on the brief were Brett A. Shumate, Acting Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel on the brief was Jesus N. Saenz, Senior Attorney, Office of

the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Roger B. Schagrin, Luke A. Meisner, and Saad Y. Chalchal, Schagrin Associates, of Washington, D.C, for Defendant-Intervenor Coalition for Fair Rack Imports. Alessandra A. Palazzolo, Christopher T. Cloutier, Elizabeth J. Drake, Jeffrey D. Gerrish, Justin M. Neuman, Maliha Khan, Nicholas J. Birch, Nicholas Phillips, and William A. Fennell also appeared.

　　　Choe-Groves, Judge: This action involves a challenge to mandatory respondent selection brought by Plaintiff Nanjing Dongsheng Shelf Manufacturing Co., Ltd. ("Plaintiff") regarding the U.S. Department of Commerce's ("Commerce") final results in the agency's administrative review of the antidumping duty order on certain steel racks from the People's Republic of China ("China") for the period of review of September 1, 2021 through August 31, 2022. Compl., ECF No. 10; Certain Steel Racks and Parts Thereof from the People's Republic of China ("Final Results"), 89 Fed. Reg. 25,235 (Dep't of Commerce Apr. 10, 2024) (final results of antidumping duty administrative review and final determination of no shipments; 2021–2022), and accompanying issues and decisions memorandum ("Final IDM"), ECF No. 20-5. Plaintiff contests Commerce's rejection of its untimely Separate Rate Certification, decision to not select Plaintiff as a mandatory respondent, and use of adverse facts available in assigning Plaintiff the China-wide entity antidumping duty rate. Compl. ¶¶ 22–29. Before the Court is Plaintiff's Motion for Judgment on the Agency Record

("Plaintiff's Motion"). Pl.'s Mot. J. Agency R. ("Pl.'s Mot."), ECF No. 23. For the below discussed reasons, Plaintiff's Motion is granted.

## BACKGROUND

Commerce published on September 16, 2019 an antidumping duty order and countervailing duty order covering steel racks produced in China. Certain Steel Racks and Parts Thereof from the People's Republic of China ("Antidumping Duty Order"), 84 Fed. Reg. 48,584 (Dep't of Commerce Sept. 16, 2019) (amended final affirmative antidumping duty determination and antidumping duty order; and countervailing duty order). Plaintiff, a Chinese producer and exporter of goods covered by the Antidumping Duty Order, filed a request for an administrative review on September 29, 2022. Pl.'s Req. Admin. Rev., PR 6.[1] Commerce initiated an administrative review of the Antidumping Duty Order on November 3, 2022. Initiation of Antidumping and Countervailing Duty Administrative Reviews ("Initiation Notice"), 87 Fed. Reg. 66,275, 66,278–79 (Dep't of Commerce Nov. 3, 2022), corrected Initiation of Antidumping and Countervailing Duty Administrative Reviews, 88 Fed. Reg. 50 (Dep't of Commerce Jan. 3, 2023). Plaintiff was identified as a respondent at the time Commerce initiated the administrative review. Initiation Notice, 87 Fed. Reg. at 66,278.

---

[1] Citations to the administrative record reflect the public record ("PR") document numbers filed in this case, ECF No. 37.

Commerce's Initiation Notice provided the procedures through which a respondent could request a separate rate, rather than the China-wide entity rate. Id. at 66,276. Respondents requesting separate rate status were required to submit either a Separate Rate Application or Separate Rate Certification within 30 days of Commerce's November 3, 2022 Initiation Notice.[2] Id. The Initiation Notice stated that "[e]xporters and producers must file a timely Separate Rate Application or Certification if they want to be considered for respondent selection." Id.

In advance of the December 5, 2022 filing deadline for Separate Rate Applications and Separate Rate Certifications, Commerce received requests to extend the deadline from Nanjing Ironstone Storage Equipment Co., Ltd. ("Ironstone"), Xiamen Luckyroc Industry Co., Ltd. ("Luckyroc"), Ningbo Xinguang Rack Co., Ltd. ("Xinguang Rack"), Jiangsu JISE Intelligent Storage Equipment Co., Ltd. ("JISU"), Jiangsu Nova Intelligent Logistics Equipment Co., Ltd. ("Nova"), and Suntop Display System Inc. ("Suntop"). Ironstone, Luckyroc, & Xinguang Rack Req. Extension Time File No Sales Certifications & Separate Rate Appl., PR 28; JISE & Nova Req. Extension Time File SRA/SRC, PR 29; Suntop Separate Rate Appl. Extension Req., PR 35. Commerce extended the

---

[2] Thirty days after November 3, 2022 was Saturday, December 3, 2022. Because the deadline fell on a weekend, submissions were due Monday, December 5, 2022. 19 C.F.R. § 351.303(b)(1).

deadline for these parties to file their Separate Rate Applications and Separate Rate Certifications to December 12, 2022.  Commerce's Ironstone, Luckyroc, & Xinguang Rack No Sales Certification Separate Rate Appl. Extension Letter, PR 36; Commerce's JISE & Nova No Sales Certification Separate Rate Appl. Extension Letter, PR 37; Commerce's Suntop No Sales Certification Separate Rate Appl. Extension Letter, PR 38.

    Prior to the extended December 12, 2022 deadline, Commerce received submissions from Nova, Nanjing Kingmore Logistics Equipment Manufacturing Co., Ltd, JISE, Xinguang Rack, and Suntop.  Nova's Separate Rate Certifications, PR 40; Nanjing Kingmore Logistics Equip. Mfr. Co., Ltd Separate Rate Certification, PR 41; JISE Separate Rate Appl., PR 43; Xinguang Rack Separate Rate Appl., PR 44; Suntop Separate Rate Appl., PR 48.

    Plaintiff also submitted its Separate Rate Certification on December 12, 2022.  Pl.'s Separate Rate Certification, PR 45.  Commerce rejected Plaintiff's Separate Rate Certification as untimely.  Commerce's Rejection Pl.'s Separate Rate Certification, PR 62.

    Commerce selected Xinguang Rack and Suntop as mandatory respondents on January 23, 2023.  Commerce's Resp't Selection Mem., PR 64.  Xinguang Rack and Suntop were selected because Commerce determined them to be "[t]he two exporters accounting for the largest value of the subject merchandise entered into

the United States during the [period of review] who timely submitted [Separate Rate Applications] or [Separate Rate Certifications].": Id. at 6.

On January 25, 2023, Plaintiff filed a request for Commerce to accept its December 12, 2022 Separate Rate Certification and select Plaintiff as a mandatory respondent. Pl.'s Req. Accept Separate Rate Appl. & Select Mandatory Resp't ("Plaintiff's January 25, 2023 Request" or "Pl.'s Jan. 25, 2023 Req."), PR 74.

Commerce and Plaintiff's counsel held an ex parte video conference meeting on February 13, 2023, during which Plaintiff's counsel explained that they assumed that the extension granted to the other respondents also applied to Plaintiff. See Commerce's Mem. Meeting Counsel Pl., PR 93. Commerce determined that Plaintiff had not filed a timely extension request and had not identified "extraordinary circumstances" warranting the acceptance of the untimely filing under 19 C.F.R. § 351.302. Commerce's Mem. Decision Not Reconsider Rejection Pl.'s Separate Rate Certification Submission, PR 108.

Plaintiff filed a Section A Questionnaire Response on February 15, 2023, reiterating its request to be selected as a mandatory respondent or, in the alternative, a voluntary respondent. Pl.'s Sec. A Questionnaire Resp., PR 91. Commerce rejected Plaintiff's Section A Questionnaire Response on August 18, 2023. Commerce's Mem. Rejection Resp. Sec. A Antidumping Duty Order, PR 177.

Case 1:24-cv-00085-JCG    Document 38    Filed 06/16/25    Page 7 of 15

Court No. 24-00085 Page 7

Commerce's preliminary results were published on October 6, 2023, in which Plaintiff was assigned the China-wide entity rate. <u>Certain Steel Racks and Parts Thereof from the People's Republic of China</u> ("<u>Preliminary Results</u>"), 88 Fed. Reg. 69,612, 69,613 (Dep't of Commerce Oct. 6, 2023) (preliminary results and partial rescission of the antidumping duty administrative review, and preliminary determination of no shipments; 2021–2022). Following the <u>Preliminary Results</u>, Plaintiff filed an administrative case brief arguing that Commerce abused its discretion in rejecting Plaintiff's Separate Rate Certification and Section A Questionnaire Response and determining not to select Plaintiff as a mandatory respondent. Pl.'s Admin. Case Br., PR 245. Defendant-Intervenor filed a rebuttal administrative case brief arguing, in relevant part, that Commerce was correct to reject Plaintiff's filings as untimely. Def.-Interv.'s Rebuttal Br. at 11–14, PR 252. In the <u>Final Results</u>, Commerce continued to assign Plaintiff the China-wide entity rate. <u>Final Results</u>, 89 Fed. Reg. at 25,236–37; Final IDM at 24–31.

Plaintiff filed this case on May 7, 2024. Summons, ECF No. 1. Plaintiff subsequently filed its Motion for Judgment on the Agency Record on October 25, 2024. Pl.'s Mot. Defendant United States ("Defendant") and Defendant-Intervenor the Coalition for Fair Rack Imports ("Defendant-Intervenor") filed responses in opposition to Plaintiff's Motion. Def.'s Resp. Pl.'s Mot. J. Agency R.

("Def.'s Resp."), ECF No. 29; Def.-Interv.'s Opp'n Pl.'s Mot. J. Agency R. ("Def.-Interv.'s Resp."), ECF No. 30. Plaintiff filed a reply in support of its motion. Pl.'s Reply Br. ("Pl.'s Reply"), ECF No. 35.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results in an administrative review of an antidumping duty order. The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

Plaintiff raises three arguments in challenging Commerce's Final Results. First, Plaintiff argues that Commerce abused its discretion and acted contrary to law in rejecting Plaintiff's untimely Separate Rate Certification. Compl. ¶¶ 22–23; Pl.'s Br. at 8–18. Second, Plaintiff contends that Commerce acted contrary to its statutory obligations in declining to select Plaintiff as a mandatory respondent. Compl. ¶¶ 24–25; Pl.'s Br. at 18–21. Third, Plaintiff argues that Commerce improperly relied on adverse facts available in assigning it the China-wide entity rate. Compl. ¶¶ 26–29; Pl.'s Br. at 21–25. The Court begins by addressing whether Plaintiff was unlawfully denied mandatory respondent status.

Plaintiff argues that, regardless of whether its Separate Rate Certification was timely, Commerce was required to have selected Plaintiff as a mandatory respondent because Plaintiff was the largest exporter of subject merchandise. Pl.'s Br. at 18–21; Compl. ¶¶ 24–25. Plaintiff asserts that Commerce had a "longstanding practice to select among the largest exporters to capture as much of the export quantity as possible for specific review given its limited resources." Pl.'s Br. at 19. Defendant and Defendant-Intervenor contend that Commerce properly excluded Plaintiff from consideration as a mandatory respondent due to Plaintiff's untimely filed Separate Rate Certification. Def.'s Resp. at 19–21; Def.-Interv.'s Resp. at 24–27.

In an administrative review of an antidumping duty order, the relevant statute mandates that Commerce "shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. § 1677f-1(c)(1). The statute allows for an exception when:

> If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, [Commerce] may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to –

> (A)   a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
>
> (B)   exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

Id. § 1677f-1(c)(2).

When Commerce's administrative review involves subject goods from a non-market economy, it is Commerce's policy that exporters and producers who do not demonstrate independence from government control are not entitled to a separate rate. Transcom, Inc. v. United States, 294 F.3d 1371, 1373 (Fed. Cir. 2002).

Commerce selected as mandatory respondents Xinguang Rack and Suntop, explaining that selection was limited to only those parties who timely submitted Separate Rate Applications and Separate Rate Certifications. Commerce's Resp't Selection Mem. at 6.

Commerce cannot impose a regulatory limitation on the selection of mandatory respondents that produces a result inconsistent with the express requirements of the statute. The statute's exception provision directs Commerce to use either a "statistically valid" sample of exporters, or the exporters accounting for the largest volume of the subject merchandise. 19 U.S.C. § 1677f-1(c)(2). Here, Commerce explained that the 12 companies for which it initiated an

administrative review was too large a number of exporters or producers for Commerce to review the whole group, and thus Commerce applied the exception provision. Commerce's Resp't Selection Mem. at 4. Commerce did not apply the sample of statistically valid exporters in the first section of the exception provision. Id.

Commerce explained that it did not examine the "largest volume" of exporters as directed by the second section of the exception provision in the statute, but instead decided to examine the "largest value" of subject merchandise, as follows:

> In administrative reviews, Commerce will typically determine the exporters and producers that account for the largest volume of subject merchandise during the [period of review], based on the aggregated volume of entries of subject merchandise during the [period of review] attributed to that company in [U.S. Customs and Border Protection] entry data. However, because the quantities of steel racks imported into the United States from China are reported to [U.S. Customs and Border Protection] in multiple units of measure, here it would not be meaningful to aggregate the reported quantities of entered steel racks for exporters to determine which exporters account for the largest volume of subject merchandise entered during the [period of review]. Therefore, in this administrative review, we recommend selecting exporters that account for the largest value of subject merchandise that can be reasonably examined . . . .

Id. at 6.

In applying the exception under the statutory provision 19 U.S.C. § 1677f-1(c)(2), Commerce deviated from the statutory language. Rather than examining

the "exporters and producers accounting for the *largest volume* of the subject merchandise" as required by statute, Commerce used the "largest value" instead. See 19 U.S.C. § 1677f-1(c)(2). The Court concludes that Commerce's deviation from the statutory mandate of "largest volume" was not in accordance with law. The statute clearly requires Commerce to use the "largest volume" as the appropriate criteria to determine mandatory respondents under the exception provision in 19 U.S.C. § 1677f-1(c)(2).

In addition, the Court concludes that Commerce's determination to reject consideration of Plaintiff as a mandatory respondent was not in accordance with law and was unsupported by substantial evidence because U.S. Customs and Border Protection data was reasonably available to Commerce showing that Plaintiff was the largest volume exporter of subject goods, accounting for more than double the combined exports of the firms selected as mandatory respondents. See Commerce's Second Automated Commercial Sys. Shipment Query at Att. Furthermore, although Plaintiff's Separate Rate Certification was untimely, it was filed only one week after the deadline and at the same time as those filed by other respondents considered for separate rate status who received filing extensions. The Court concludes that the data in the Separate Rate Certification filed one week late was reasonably available to Commerce, particularly since it was filed at the same

time as other information considered by Commerce in conducting the mandatory respondent selection.

The Court understands that Commerce's regulations allow it to establish deadlines "because Commerce clearly cannot complete its work unless it is able at some point to 'freeze' the record and make calculations and findings based on that fixed and certain body of information." Reiner Brach GmbH & Co.KG v. United States, 26 CIT 549, 559, 206 F. Supp. 2d 1323, 1334 (2002); Yantai Timken Co., Ltd. v. United States, 31 CIT 1741, 1755, 521 F. Supp. 2d 1356, 1371 (2007) ("In order for Commerce to fulfill its mandate to administer the antidumping duty law, including its obligation to calculate accurate dumping margins, it must be permitted to enforce the time frame provided in its regulations."). Under the specific facts of this case, however, the Court holds that Commerce's failure to comply with the statutory requirements for the selection of mandatory respondents based on exporters of the "largest volume" of subject merchandise under 19 U.S.C. § 1677f-1(c)(2) is not justified or excused by Commerce's regulations setting forth deadlines to file Separate Rate Applications or Certifications.

## CONCLUSION

For the reasons set forth above, the Court holds that Commerce's determination to reject Plaintiff's request for selection as a mandatory respondent was not in accordance with law and was not supported by substantial evidence.

The Court remands this matter to Commerce to reconsider the selection of mandatory respondents in accordance with this Opinion. Because remand will require Commerce to reconsider Plaintiff's Separate Rate Certification and potentially the rates assigned to all respondents, the Court defers consideration of Plaintiff's remaining arguments.

Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record, ECF No. 23, is granted; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1) Commerce shall file its remand determination on or before December 16, 2025;

(2) Commerce shall file the administrative record on or before December 30, 2025;

(3) Comments in opposition to the remand determination shall be filed on or before January 27, 2026;

(4) Comments in support of the remand determination shall be filed on or before February 24, 2026; and

(5) The joint appendix shall be filed on or before February 24, 2026.

                                                      /s/ Jennifer Choe-Groves
                                               Jennifer Choe-Groves, Judge

Date:   June 16, 2025
           New York, New York