UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| NANJING DONGSHENG SHELF MANUFACTURING CO., LTD. | ) | |
| | ) | |
| Plaintiff, | ) | Court No. 24-00085 |
| v | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COALITION FOR FAIR RACK IMPORTS | ) | |
| Defendant-Intervenor. | ) | |

## PLAINTIFF'S REMAND COMMENTS

Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**INTER-GLOBAL TRADE LAW GROUP**
Suite 1101
1156 Fifteenth Street., N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

Dated: March 23, 2026

## TABLE OF AUTHORITIES

**CASES**

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003)............................................2

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001).......................................................2

Nanjing Dongsheng Shelf Manufacturing Co., Ltd., ("Dongsheng" or "Plaintiff") hereby files comments in opposition to the remand results. Remand Results (February 23, 2026), ECF 44.

In the final remand results, the Department denied Dongsheng's by-product offset. This is not supported by the record or past practice. As the Department itself explained, "with respect to scrap, '{Commerce recognizes} that, in certain situations, a respondent's normal accounting system does not track scrap generated and only tracks the quantities of scrap sold. In such instances, Commerce's policy is to allow the offset for scrap sold if a respondent can show a reasonable link between the quantities of scrap sold and scrap generated.'" Remand Results at 25. Dongsheng has fulfilled this and should have been granted a by-product offset.

Dongsheng explained that in its normal business, Dongsheng only weighed and recorded the weight of the steel scrap at the time of sale and did not weigh and record the weight of the steel scrap at the time it was generated. Specifically, Dongsheng claimed the offset amount of steel scrap based on the total quantity of steel scrap sold during the POR, Dongsheng allocated the total POR steel scrap sold to the self-produced products based on standard steel weight for these products to get a ratio, and multiplied the ratio by the unit standard weight of steel for each CONNUMs to reach the unit consumption for each type of steel scrap reported in the FOP database. Dongsheng Supp Qre (January 6, 2026) at 4 & Exhibit SQ2-1, **Rem. CR28-30 Rem. PR29**. Therefore, the Department's concern that it is possible that the quantity of steel scrap sold during the POR may exceed the scrap generated because Dongsheng produced some non-subject merchandise, is incorrect and fails to account for this calculation based on CONNUMs sold to the U.S.

1

Dongsheng also explained that it periodically sold the scrap generated in the production. Therefore, for an extended period, such as the POR, the quantity of scrap sold is essentially the same as the quantity of scrap generated.  Dongsheng confirmed that the total quantity of steel scrap sold reported in Exhibit D-5 was all scrap generated during the POR.  Since the steel scrap was not reintroduced into production during the POR, this quantity produced and sold during the POR is reasonably the same quantity for steel scraps generated during the POR. *Id*. at 3 & Exhibit SQ2-2, **Rem. CR28-30 Rem. PR29**.  Dongsheng booked the quantity of steel scrap sold in the sales revenue ledger in the accounting in its normal business and provided sample accounting voucher and invoice recording the scrap sales as requested by the Department.  *Id*. at Exhibit SQ2-3.

Indeed, in the draft remand, the Department did grant Dongsheng's by-product offset. Draft Remand Analysis Memo (February 9, 2026) at 2, **Rem. PR44**.  Further, in the second review, first review, and investigation, the Department granted Dongsheng's by-product offset. *See* **Attachment** (excerpts from public memos demonstrating by-product offset was granted). Dongsheng maintained the same records in those reviews as the present, and the Department found it was sufficient to grant a by-product offset.  It is arbitrary to now determine otherwise. *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003) (Commerce acts arbitrarily and capriciously when it "consistently follow[s] a contrary practice in similar circumstances and provide[s] no reasonable explanation for the change in practice."); *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.").  Indeed, in the investigation the Department even verified Dongsheng,

including its scrap records, and found the records were reliable and verifiable for a by-product offset.

Accordingly, the record and the Department's past practice support granting Dongsheng's by-product offset.

**Conclusion and Prayer for Relief**

In light of the foregoing, the Department's *Final Results* were not supported by substantial evidence or in accordance with the law.  Plaintiff respectfully requests that the Court remand this case for redetermination to reconsider Plaintiff's by-product offset.

Respectfully submitted,

 /s/ Gregory S. Menegaz
Gregory S. Menegaz
Alexandra H. Salzman
Vivien Jinghui Wang
**INTER-GLOBAL TRADE LAW GROUP**
Suite 1101
1156 Fifteenth Street., N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

Date: March 23, 2026

3

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **667** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**INTER-GLOBAL TRADE LAW GROUP**
Suite 1101
1156 Fifteenth Street., N.W.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
*Counsel to Plaintiff*

1

Attachment



Barcode:37990171 -50-088 INV - Investigation -

**UNITED STATES DEPARTMENT OF COMMERCE**
International Trade Administration
Washington, D.C. 20230

A-570-088
Investigation
~~Proprietary Document~~
EC/AD/OIV: PO
POI: 10/01/2017 – 03/31/2018
**PUBLIC VERSION**

February 25, 2019

**MEMORANDUM TO:**      The File

**THROUGH:**      Howard Smith *HS*
Program Manager
AD/CVD Operations, Office IV
Enforcement and Compliance

**FROM:**      Patrick O'Connor *PO*
International Trade Analyst
AD/CVD Operations, Office IV
Enforcement and Compliance

**SUBJECT:**      Preliminary Determination in the Antidumping Duty Investigation of Steel Racks from The People's Republic of China: Analysis Memorandum for Nanjing Dongsheng Shelf Manufacturing Co., Ltd.

This memorandum describes the calculation of the preliminary dumping margin for Nanjing Dongsheng Shelf Manufacturing Co., Ltd. (Dongsheng), a mandatory respondent in the above-referenced antidumping duty investigation. Attachment I contains copies of the SAS margin program log and output. The program log and output are not subject to public summary.

## I.      PRELIMINARY DETERMINATION

| | |
|---|---|
| Quantity Sold: | [      ] pieces |
| Total Value: | [      ] U.S. Dollars |
| Total PUDD: | [      ] U.S. Dollars |
| Weighted-Average Margin: | 18.08 percent |

We calculated Dongsheng's preliminary dumping margin using the U.S. sales database submitted as dongus02 and the factors of production (FOP) database submitted as dongfop02.

Barcode:3799017-01 A-570-088 INV – Investigation  –

The U.S. sales database was submitted on December 6, 2018, and the FOP database was submitted on December 17, 2018.[1]

## II.    NORMAL VALUE

### A.  Overview

Section 773(c)(1) of the Tariff Act of 1930, as amended (the Act), provides that the Department of Commerce (Commerce) shall determine normal value (NV) using an FOP methodology if: (1) the subject merchandise is exported from a non-market economy (NME) country; and (2) the information available does not permit the calculation of NV using home-market prices, third-country prices, or constructed value under section 773(a) of the Act.  Because Commerce considers the People's Republic of China (China) to be an NME country, we calculated NV using the FOP in accordance with section 773(c) of the Act.

Specifically, we calculated NV as follows:  (1) we added total material, energy, and labor costs to derive the cost of manufacturing (COM); (2) we multiplied COM by the surrogate factory overhead rate to calculate total factory overhead costs; (3) we added COM and factory overhead costs to derive the total cost of manufacturing (TOTCOM); (4) we multiplied TOTCOM by the surrogate selling, general, and administrative expenses (SG&A) rate to calculate SG&A costs; (5) we added TOTCOM to SG&A costs to derive the total cost of production (COP); (6) we multiplied COP by the surrogate profit rate to calculate total profit; and, (7) we added COP, total profit, and packaging costs and, where appropriate, subtracted by-product values to derive NV. *See* Attachment 1.

### B.    NV Calculation

We based the cost of materials (including packing materials) and labor on surrogate values (SVs).[2]  We calculated the cost of direct and packing materials consumed by multiplying the quantity of the input consumed by the per-unit surrogate price of the input used, and adding, where appropriate, freight-in expenses.  To calculate per-unit truck freight costs, we multiplied the freight distance by the truck freight SV (kilogram per kilometer), added the result to the SV reported for the applicable input, and then multiplied the sum by the reported per-unit consumption of the input in kilograms.

---

[1] See letter from Dongsheng, re: "Steel Racks from the People's Republic of China-Supplemental Section C Questionnaire Response," dated December 6, 2018 (ND Section C Supplemental Response); see also letter from Dongsheng, re: "Steel Racks from the People's Republic of China-Supplemental Section D Questionnaire Response," dated December 17, 2018 (ND Section D Supplemental Response).
[2] *See* Memorandum, re: "Preliminary Determination of the Antidumping Duty Investigation of Steel Racks from the People's Republic of China: Surrogate Value Memorandum," dated concurrently with this memorandum (Preliminary Surrogate Value Memorandum).

Barcode:3799017-01 A-570-088 INV - Investigation -

We multiplied water consumption, electricity consumption, and direct labor and indirect labor consumption by applicable SVs, and included the total cost in COM.[3]  For the specific calculations of the components of the cost of manufacturing, namely direct materials costs (including freight), direct labor cost, and energy cost, *see* the programing language in Attachment I.

We made currency conversions into U.S. dollars for SVs in foreign currencies in accordance with section 773A(a) of the Act based on the exchange rates as certified by the Federal Reserve Bank in effect on the dates of the U.S. sales.

## III.    U.S. SALES

### A.    Calculation of Net U.S. Price

Dongsheng reported export price (EP) transactions.  For the margin calculation, we used Dongsheng's gross per-piece sales prices (GRSPRU).  Dongsheng reported that its EP sales were made on an ex-works (EXW) basis.  Therefore, we did not deduct any movement expenses from the starting gross unit prices.

Dongsheng reported that it maintains an exclusive agreement with its U.S. customer [                                ], which allows [    ] exclusive rights to sell Dongsheng's merchandise in the United States.[4]  While there have been cases where Commerce found companies with an exclusive distribution agreement to be affiliated, for example in *Soil Pipe Fittings from China*, the companies that Commerce found to be affiliated in that case had an exclusive distribution agreement *and* closely intertwined operations *and* a joint venture agreement for a project in the United States.[5]  Here, Dongsheng and [    ] do not have any joint-venture agreements and their operations are not intertwined.

Although Commerce has found companies to be affiliated under close supplier relationships, we do not find such a relationship in this case.  The SAA identifies close supplier relationships as relationships where the supplier or the buyer becomes reliant upon the other party.[6]  Commerce considers that a close supplier relationship exists when the relationship is significant and cannot be easily replaced.  The evidence here does not indicate [    ] and Dongsheng were reliant upon one another, that their relationship could not be replaced, or that one party controlled the other

---

[3] *See* Parts 7 and 8 of the margin program included as Attachment I. For U.S. sales observations [ ] and [  ], we calculated NV using FOPs reported for CONNUMs [                    ] and [                    ], respectively). See Attachment 1.

[4] *See* Letter from Dongsheng, re: "Steel Racks from the People's Republic of China-Section A Questionnaire Response," dated November 7, 2018 (ND Section A Response) at 17.

[5] *See Cast Iron Soil Pipe Fittings From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, Postponement of Final Determination and Extension of Provisional Measures*, 83 FR 7145 (February 20, 2018) (*Soil Pipe Fittings from China*) and accompanying preliminary decision memorandum, unchanged in *Cast Iron Soil Pipe Fittings From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Determination of Critical Circumstances, in Part*, 83 FR 33205 (July 17, 2018).

[6] Statement of Administrative Action Accompanying the Uruguay Round Agreements Act ("SAA"), H.R.Rep. No. 103-316, at 870 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4199.

Barcode:3799017-01 A-570-088 INV - Investigation  -

party.  The record shows that: 1) the distribution agreement ran for [

]; 2)
Dongsheng could [

]; 3) the distribution agreement does not prohibit [

]; 4) [    ] was profitable in 2017; and 5) Dongsheng
did not grant [

].[7]

Lastly, record evidence does not indicate that a principal-agent relationship exists between
Dongsheng and [    ].  We find that: 1) documentation does not identify [    ] as an agent for
Dongsheng; 2) [    ] does not use marketing materials from Dongsheng and Dongsheng is not
involved in [    ] sales, does not interact with [    ] customers, is not known by – and does not
know of – [    ] customers, and is not identified on [    ] sales documentation; and 3) [    ]
maintains a warehouse of Dongsheng's rack components ([    ] takes possession and bears the
risk of loss) and adds value to those components.[8]

## IV.    DIFFERENTIAL PRICING

In order to determine whether Dongsheng's sales of merchandise under consideration to the
United States were made at less than NV, we compared EPs to NV using a differential pricing
analysis of Dongsheng's Solar's U.S. sales.[9]

The results of the differential pricing analysis are as follows:

| Value of Passing Sales | Value of All Sales | U.S. Sales Passing the Cohen's d Test by Value |
|---|---|---|
| [    ] | [    ] | 18.2% |

The 18.2% of export sales passing the Cohen's *d* test does not confirm the existence of a pattern
of EPs for comparable merchandise that differ significantly among purchasers, regions or time
periods.  Accordingly, Commerce preliminarily determined to use the A-to-A method for all U.S.
sales when making comparisons of EP to NV for Dongsheng.

---

[7] *See* letter from Dongsheng, re "Steel Racks from the People's Republic of China-Supplemental Section A
Questionnaire Response," dated November 30, 2018 (ND Supplemental A Response); *see* ND Section C
Supplemental Response); *see* letter from Dongsheng, re "Steel Racks from the People's Republic of China-Rebuttal
Comments," dated December 3, 2018  (ND Response to Petitioner).  Also *see Large Residential Washers From the
Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 82 FR 82788 (September
12, 2017) (*Washers from Korea*), and accompanying Issues and Decision Memorandum at Comment 2.
[8] *See generally,* ND Supplemental A Response, ND Section C Supplemental Response, and ND Response to
Petitioner. Also *see Stainless Steel Sheet and Strip in Coils From Taiwan: Final Results and Rescission in Part of
Antidumping Duty Administrative Review*, 73 FR 6932 (February 6, 2008).
[9]  For details on the differential pricing analysis, *see* the "Determination of Comparison Method" section of the
memorandum, re: "Steel Racks from the People's Republic of China: Decision Memorandum for Preliminary
Determination of Sales at Less Than Fair Value," dated February 25, 2019.

Filed By: Patrick Oconnor, Filed Date: 3/1/19 3:58 PM, Submission Status: Approved

4

Barcode:3799017-01 A-570-088 INV - Investigation  -

## V.    MARGIN CALCULATION

We calculated a unit margin (UMARGIN) for Dongsheng by deducting the net per-unit U.S. price from the per-unit NV. We calculated the extended margin (EMARGIN) for each CONNUM by multiplying the unit margin by the total quantity sold.  We calculated the total sales value for each CONNUM by multiplying the total quantity sold by the net per-unit price (USVALUE).  We calculated the percent margin (PCTMARG) by dividing the extended margin by the total sales value and multiplying by 100. For the details of the calculation of the margin, see the sections entitled "PART 9A AND PART 9B: CALCULATE NET U.S. PRICE FOR EP AND CEP SALES" and "PART 13: COMPARISON RESULTS" in Attachment I.

Barcode:3799017-01 A-570-088 INV - Investigation  -

**Attachment I**

SAS Log and Output

(*Business Proprietary Information–not subject to public summary*)

Barcode:4168967-01 A-570-088 REV - Admin Review 3/4/19 - 8/31/20



UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-570-088
Administrative Review
POR:  03/04/2019 – 08/31/2020
~~Business Proprietary Document~~
E&C/IV:  EB
Public Version

| | |
|---|---|
| DATE: | September 30, 2021 |
| MEMORANDUM TO: | The File |
| THROUGH: | Jeff Pedersen *JP*<br>Acting Program Manager<br>AD/CVD Operations, Office IV |
| FROM: | Elizabeth Bremer *EB*<br>Case Analyst<br>AD/CVD Operations, Office IV |
| RE: | First Administrative Review of the Antidumping Duty Order on Certain Steel Racks and Parts Thereof from the People's Republic of China: Dongsheng Analysis Memorandum |

This memorandum contains details regarding our calculation of the preliminary dumping margin for Nanjing Dongsheng Shelf Manufacturing Co., Ltd. (Dongsheng), the mandatory respondent in the above-referenced administrative review.  Attachment I to the proprietary version of this memorandum consists of the margin calculation program and log, which includes the differential pricing analysis.  Attachment II includes the exchange rates and common macros, and Attachment III includes the SV Summary.  The public version of this memorandum does not include Attachment I.

## I.    PRELIMINARY RESULTS

### A.  Summary Statistics

| | |
|---|---|
| Quantity Sold | [       ] pieces |
| Total Value U.S. Sales | $[        ] |
| Total Amount of Dumping | $[       ] |
| Weighted-Average Margin | 9.02 Percent |



INTERNATIONAL
**T R A D E**
ADMINISTRATION

Barcode:4168967-01 A-570-088 REV - Admin Review 3/4/19 - 8/31/20

We calculated Dongsheng's preliminary dumping margin using the U.S. sales (dongus02.sas7bdat)[1] submitted by Dongsheng on June 22, 2021[2] and factors of production (dongfp03.sas7bdat)[3] databases submitted by Dongsheng on August 13, 2021.[4]

## II.      NORMAL VALUE

Section 773(c)(1) of the Tariff Act of 1930, as amended (the Act), provides that the Department of Commerce (Commerce) shall determine normal value (NV) using an FOP methodology if: (1) the subject merchandise is exported from a non-market economy (NME) country; and (2) the information available does not permit the calculation of NV using home-market prices, third-country prices, or constructed value under section 773(a) of the Act.  Because Commerce considers the People's Republic of China (China) to be an NME country, we calculated NV using the FOP in accordance with section 773(c) of the Act.

Specifically, we calculated NV as follows: (1) we added total direct material, energy, and labor costs to derive the cost of manufacturing (COM); (2) we multiplied COM by the surrogate factory overhead rate to calculate total factory overhead costs; (3) we added COM and factory overhead costs to derive the total cost of manufacturing (TOTCOM); (4) we multiplied TOTCOM by the surrogate selling, general, and administrative expenses (SG&A) rate to calculate SG&A costs; (5) we added TOTCOM to SG&A costs to derive the total cost of production (COP); (6) we multiplied COP by the surrogate profit rate to calculate total profit; and, (7) we added COP, total profit, and packaging costs and, where appropriate, subtracted by-product values to derive NV.  *See* the programming language in Attachment I.

### A.  Direct Material and Packing Inputs

We calculated the value of direct and packing materials consumed by multiplying the quantity of the input consumed by the per-unit value of the input used, and adding, where appropriate, freight expenses.[5]  To calculate per-unit input costs, including all applicable freight costs, we multiplied the freight distance by the truck freight surrogate value (USD per kilogram per kilometer), added the result to the surrogate values reported for the inputs, and then multiplied the sum by the reported consumption of the input.  See the programming language in Attachment I.

When Dongsheng used NME providers for its transportation or transportation related services, we based the transportation expenses (e.g., truck freight and brokerage and handling) on the relevant surrogate values listed in the Preliminary Surrogate Value Memorandum.  Dongsheng reported the transportation distance, in kilometers, to its factories from the suppliers of each of

---

[1] ACCESS bar code number 4135855-03.  We renamed the database to dongus02.
[2] *See* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Dongsheng Sections C & D and Double Remedy Supplemental Questionnaire Response," dated June 22, 2021 (Dongsheng C, D & DR SQR).
[3] ACCESS bar code number 4152252-02.
[4] *See* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Dongsheng 2nd Section C & Supplemental Questionnaire Response," dated August 13, 2021 (Dongsheng 2nd C & D SQR).
[5] *See* Memorandum, "First Administrative Review of the Antidumping Duty Order on Certain Steel Racks and Parts Thereof from the People's Republic of China: Preliminary Surrogate Value Memorandum" dated concurrently with this memorandum (Preliminary Surrogate Value Memorandum).

Filed By: Elizabeth Bremer, Filed Date: 10/7/21 12:39 PM, Submission Status: Approved

the direct materials and packing materials.  In accordance with the Court of Appeals for the Federal Circuit's decision in Sigma Corp. v. United States, 117 F. 3d 1401, 1407-08 (Fed. Cir. 1997), when the surrogate value for the material input is based on import prices, we used as the transportation distance the shorter of: 1) the distance from the factory to the supplier or 2) the distance from the factory to the nearest seaport.

## III.    U.S. SALES

Dongsheng reported only export price (EP) transactions.[6]  For the margin calculation, we used Dongsheng's gross-per-piece sales prices (GRSPRU).  Dongsheng reported its EP sales were made on an ex-works (EXW) basis,[7] so we did not deduct any movement expenses from the starting gross unit prices.

Dongsheng reported that it maintains an [                                              ] with its U.S. importer [                              ], which obligates Dongsheng to sell to only [   ] in the U.S. market and [   ] to only buy from Dongsheng in the Chinese market.[8]  Dongsheng stated that "in the normal business of Dongsheng, [   ] is not regarded as an affiliated company"[9] and that "Dongsheng did not have any affiliated company during the POR."[10]   In the investigation, we found no affiliation between Dongsheng and [   ] under close supplier relationships and based on a lack of principal-agent relationship.[11]  Dongsheng reported no significant changes to the relationship occurred between the investigation and this administrative review.[12]

In *Soil Pipe Fittings from China*, Commerce found companies to be affiliated because they had an exclusive distribution agreement *and* closely intertwined operations *and* a joint venture agreement for a project in the United States.[13]  Dongsheng and [   ] do not share closely intertwined operations, nor do they have a joint venture agreement.[14]

Under the SAA, a close supplier relationship is a relationship in which the supplier or buyer

---

[6] *See* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Dongsheng Section C Questionnaire Response," dated April 5, 2021 (Dongsheng Section CQR) at 19.

[7] *See* Dongsheng Section CQR at 23.

[8] *See* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Dongsheng Section A Questionnaire Response," dated March 17, 2021 (Dongsheng Section AQR) at Exhibit CEPA-2 and CEPA-3; *see also* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Dongsheng Section A Supplemental Questionnaire Response," dated May 10, 2021 (Dongsheng Section A SQR) at 7-8.

[9] *See* Dongsheng Section AQR at cover page (PDF page 7).

[10] *See* Dongsheng Section AQR at 13.

[11] *See* Commerce's Memorandum, "Preliminary Determination in the Antidumping Duty Investigation of Steel Racks from the People's Republic of China: Analysis Memorandum for Nanjing Dongsheng Shelf Manufacturing Co., Ltd.," dated February 25, 2019 at 3-4.

[12] *See* Dongsheng Section A SQR 3.

[13] *See Cast Iron Soil Pipe Fittings From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, in Part, Postponement of Final Determination and Extension of Provisional Measures*, 83 FR 7145 (February 20, 2018) (*Soil Pipe Fittings from China*) and accompanying preliminary decision memorandum, unchanged in *Cast Iron Soil Pipe Fittings From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Determination of Critical Circumstances, in Part*, 83 FR 33205 (July 17, 2018).

[14] *See* Dongsheng Section AQR at cover page (PDF page 7) and 3-5; *see also* Dongsheng Section A SQR at 8.

Barcode:4168967-01 A-570-088 REV - Admin Review 3/4/19 - 8/31/20

becomes reliant upon the other party.[15] We consider a close supplier relationship to exist when a relationship cannot be easily replaced. We do not find control through a close supplier relationship between Dongsheng and [   ] because neither party was reliant upon the other, the relationship can be replaced, and one party does not control the other. Based on record evidence: (1) Dongsheng can sell to other companies outside of the United States and [   ] can purchase from other companies outside of China;[16] (2) Dongsheng and [   ] could enter into a similar relationship with other companies if the [                    ] were terminated;[17] (3) [

                                        ];[18] (4) neither party can direct the other to sell to certain customers, countries or regions outside of the exclusive distribution terms;[19] and (4) while [


].[20]

Based on record evidence, we do not find that a principle-agent relationship exists. We found that (1) Dongsheng has no role in negotiations between [   ] and its U.S. customer;[21] (2) Dongsheng has no interaction with [   ] U.S. customers;[22] (3) [   ] maintains an inventory of Dongsheng's products;[23] (4) [   ] bears the risk of loss;[24] (5) [   ] adds value in some transactions (it designs, and assembles Dongsheng's rack parts into, a rack system for U.S. customers);[25] (6) Dongsheng is not identified in [    ] marketing materials;[26] and (7) Dongsheng is not identified in the sales documents that [   ] issues to its U.S. customers. [27]

### A. Exchange Rates and Conversions

We converted surrogate values (SV) that were in Euro or Romanian Lei into U.S. dollars in accordance with section 773A(a) of the Act. We used exchange rates certified by the Federal Reserve Bank that were in effect on the dates of the U.S. sales.

### B. Value Added Tax (VAT)

The Chinese VAT schedule placed on the record of this review by Dongsheng demonstrates that the VAT rate is 16 percent in March 2019 and reduced to 13 percent for the remainder of the POR and the rebate rate for export sales of subject merchandise is 13 percent, under applicable

---

[15] Statement of Administrative Action Accompanying the Uruguay Round Agreements Act ("SAA"), H.R.Rep. No. 103-316, at 870 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4199.
[16] *See* Dongsheng Section A SQR at 10.
[17] *See* Dongsheng Section AQR at Exhibits CEPA-2.
[18] *Id.*
[19] *See* Dongsheng Section A SQR at 7.
[20] *See* Dongsheng Section AQR at Exhibits CEPA-2.
[21] *See* Dongsheng Section A SQR at 14-15.
[22] *Id. at* 14-15.
[23] *Id.* at 24.
[24] *Id.* at 24.
[25] *Id.* at 20 and 24.
[26] *Id.* at 23.
[27] *Id* at 16-17.

Filed By: Elizabeth Bremer, Filed Date: 10/7/21 12:39 PM, Submission Status: Approved

Barcode:4168967-01 A-570-088 REV - Admin Review 3/4/19 - 8/31/20

Chinese regulations.[28]  Thus, we have determined that the irrecoverable VAT on subject merchandise is the difference of these rates, *i.e.*, three percent.  As a result, we adjusted the U.S. prices for sales with export dates in March 2019 for the un-refunded VAT, in order to calculate EP, net of VAT for Dongsheng.

We used the following programming language for irrecoverable VAT:

[                                        ]

### C.  Free Samples

Dongsheng reported it received no renumeration for certain types of sales.[29]  Accordingly, we removed these in the program.

[                                    ]

### D.  Entered Value

For all but [                                                          ].[30]  Accordingly, for the [
        ].

[                        ]

### E.  Double Remedy Offset

Pursuant to section 777(A)(f) of the Tariff Act of 1930, as amended (the Act), and for reasons explained in the Preliminary Decision Memorandum, we made adjustments for domestic subsidies.  See also Double Subsidy Adjustment Analysis Memorandum for the calculation of this adjustment.

```
CVDDOM=0.0108;

        GUPADJU    = CVDDOM*ENTVALUE;
```

## IV.    DIFFERENTIAL PRICING

In order to determine whether Dongsheng's sales of subject merchandise to the United States were made at less than NV, we compared net U.S. prices to NV using a differential pricing analysis.

The results of the differential pricing analysis are as follows:

---

[28] *See* Dongsheng Section C SQR at 42-44 and Exhibit C-4; *see also* Dongsheng C, D & DR SQR at 4; and Dongsheng 2nd C & D SQR at 4-5 and Exhibit SQ2-3.

[29] *See* Dongsheng Section C SQR at 47; *see also* Dongsheng C, D & DR SQR at 5 and Exhibit SQ1-2 and Dongsheng 2nd C & D SQR at 3 and Exhibit SQ2-2.

[30] *See* Dongsheng C, D & DR SQR at 4 and Exhibit SQ1-1.

Filed By: Elizabeth Bremer, Filed Date: 10/7/21 12:39 PM, Submission Status: Approved

Barcode:4168967-01 A-570-088 REV - Admin Review 3/4/19 - 8/31/20

| VALUE OF PASSING SALES ============ | VALUE OF ALL SALES ========= | PERCENT OF SALES PASSING BY VALUE ============= |
|---|---|---|
| [          ] | [          ] | 40.4% |

The weighted-average dumping margins calculated using the three methodologies indicated below are listed in the table:

| AD VALOREM WEIGHTED AVERAGE MARGIN RATE (PERCENT) STANDARD METHOD ================ | AD VALOREM WEIGHTED AVERAGE MARGIN RATE (PERCENT) MIXED ALTERNATIVE METHOD ================ | AD VALOREM WEIGHTED AVERAGE MARGIN RATE (PERCENT) A-to-T ALTERNATIVE METHOD ================ |
|---|---|---|
| 6.75 | 9.02 | 11.40 |

For Dongsheng, based on the results of the differential pricing analysis, Commerce preliminary finds that 40.4 percent of the value of U.S. sales pass the Cohen's *d* test, and confirms the existence of a pattern of prices for comparable merchandise that differ significantly among purchasers, regions, or time periods. Further, Commerce determines there is a meaningful difference (*e.g.*, relative margin change is not greater than or equal to 25%) between the weighted-average dumping margin calculated using the A-to-A method and the weighted-average dumping margin calculated using the mixed alternative method based on applying the average-to transaction method to those U.S. sales which passed the Cohen's *d* test and the A-to-A method to those sales which did not pass the Cohen's *d* test. Thus, for these preliminary results, Commerce is applying the mixed alternative method for all U.S. sales to calculate Dongsheng's weighted-average dumping margin.

Filed By: Elizabeth Bremer, Filed Date: 10/7/21 12:39 PM, Submission Status: Approved

Barcode:4168967-01 A-570-088 REV - Admin Review 3/4/19 - 8/31/20

## List of Attachments

I.   **SAS Dumping Margin Program, Log, and Output**
II.  **Exchange Rates and Common Macros**
III. **SV Summary**

Barcode:4168967-01 A-570-088 REV - Admin Review 3/4/19 - 8/31/20

**Attachment I**

SAS Dumping Margin Program, Log, and Output

(*Business Proprietary Information–not subject to public summary*)

Barcode:4300367-01 A-570-088 REV - Admin Review 9/1/20 - 8/31/21

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-570-088
Administrative Review
POR:  09/01/2020 – 08/31/2021
**Public Version**
E&C/IV:  EB

DATE:              September 30, 2022

MEMORANDUM TO:     The File

THROUGH:           Howard Smith  *HS*
                   Program Manager
                   AD/CVD Operations, Office IV

FROM:              Elizabeth Bremer  *EB*
                   International Trade Compliance Analyst
                   AD/CVD Operations, Office IV

RE:                Certain Steel Racks and Parts Thereof from the People's Republic
                   of China: Preliminary Results Margin Calculation for Dongsheng

This memorandum contains details regarding our calculation of the preliminary dumping margin for Nanjing Dongsheng Shelf Manufacturing Co., Ltd. (Dongsheng), one of the mandatory respondents in the above-referenced administrative review.  Attachment I to the proprietary version of this memorandum contains the dumping margin calculation program and log, which includes the differential pricing analysis.  Attachment II contains the exchange rates and common macros, and Attachment III contains the surrogate value (SV) summary.  The public version of this memorandum does not include Attachment I.

## I.    PRELIMINARY RESULTS

### A.  Summary Statistics

Quantity Sold                 [        ] pieces
Total Value U.S. Sales        $[            ]
Total Amount of Dumping       $[            ]
Weighted-Average Margin       39.16 Percent

Filed By: Jonathan Hill, Filed Date: 10/14/22 1:51 PM, Submission Status: Approved



We calculated Dongsheng's preliminary dumping margin using the U.S. sales database (dongus04.sas7bdat)[1] submitted by Dongsheng on September 20, 2022,[2] and factors of production (FOP) database (dongfp03.sas7bdat)[3] submitted by Dongsheng on August 25, 2022.[4]

## II.     NORMAL VALUE

Section 773(c)(1) of the Tariff Act of 1930, as amended (the Act), provides that the Department of Commerce (Commerce) shall determine normal value (NV) using an FOP methodology if: (1) the subject merchandise is exported from a non-market economy (NME) country; and (2) the information available does not permit the calculation of NV using home-market prices, third-country prices, or constructed value under section 773(a) of the Act.  Because Commerce considers the People's Republic of China (China) to be an NME country, we calculated NV using the FOP in accordance with section 773(c) of the Act.

Specifically, we calculated NV as follows: (1) we added total direct material, energy, and labor costs to derive the cost of manufacturing (COM); (2) we multiplied COM by the surrogate factory overhead rate to calculate total factory overhead costs; (3) we added COM and factory overhead costs to derive the total cost of manufacturing (TOTCOM); (4) we multiplied TOTCOM by the surrogate selling, general, and administrative expenses (SG&A) rate to calculate SG&A costs; (5) we added TOTCOM to SG&A costs to derive the total cost of production (COP); (6) we multiplied COP by the surrogate profit rate to calculate total profit; and, (7) we added COP, total profit, and packaging costs and, where appropriate, subtracted by-product values to derive NV.  *See* the programming language in Attachment I.

### A.  Direct Material and Packing Inputs

We calculated the value of direct and packing materials consumed by multiplying the quantity of the input consumed by the per-unit value of the input used, and adding, where appropriate, freight expenses.[5]  To calculate per-unit input costs, including all applicable freight costs, we multiplied the distance an input was transported by truck, by the surrogate truck freight rate (expressed in USD per kilogram per kilometer), added the result to the per-unit surrogate value used to value the input, and then multiplied the sum by the reported quantity of the input consumed in producing subject merchandise.  *See* the programming language in Attachment I.

When Dongsheng used NME providers for its transportation or transportation related services, we based the transportation expenses (*e.g.*, truck freight and brokerage and handling) on the relevant surrogate values listed in the Preliminary Surrogate Value Memorandum.  Dongsheng reported the distance, in kilometers, between its factories and the suppliers of each of the direct

---

[1] ACCESS bar code number 4286236-02.

[2] *See* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Sixth Supplemental Questionnaire Response," dated September 20, 2022 (Dongsheng Sixth SQR).

[3] ACCESS bar code number 4278375-02.

[4] *See* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Fifth Supplemental Questionnaire Response," dated August 25, 2022 (Dongsheng Fifth SQR).

[5] *See* Memorandum, "Certain Steel Racks and Parts Thereof from the People's Republic of China: Preliminary Surrogate Value Memorandum" dated concurrently with this memorandum (Preliminary Surrogate Value Memorandum).

2

Barcode:4300367-01 A-570-088 REV - Admin Review 9/1/20 - 8/31/21

materials and packing materials that it used to produce and pack subject merchandise.  In accordance with the Court of Appeals for the Federal Circuit's decision in *Sigma Corp. v. United States*, 117 F. 3d 1401, 1407-08 (Fed. Cir. 1997), when the surrogate value for the material input is based on import prices, we used as the transportation distance the shorter of: 1) the distance from the factory to the supplier or 2) the distance from the factory to the nearest seaport.

## III.    U.S. SALES

Dongsheng reported that it only made export price (EP) sales[6] and all of its EP sales were on an [          ] basis.[7]   Therefore, we did not deduct any movement expenses from the starting per-piece gross sales prices (GRSUPRU).

### A.  Exchange Rates and Conversions

We converted SVs that were in Euro or Bulgarian lev into U.S. dollars in accordance with section 773A(a) of the Act.  We used exchange rates certified by the Federal Reserve Bank that were in effect on the dates of the U.S. sales.

### B.  Value Added Tax (VAT)

The Chinese VAT schedule, placed on the record of this review by Dongsheng, demonstrates that the VAT rate is 13 percent for the period of review (POR), and the rebate rate for export sales of subject merchandise is also 13 percent under applicable Chinese regulations.[8]   Thus, we have determined that there is no irrecoverable VAT on subject merchandise.  As a result, we did not adjust the U.S. prices for un-refunded VAT.

### C.  Sales of [          ]

Dongsheng reported that it received no renumeration for certain transactions involving [          ].[9]   Accordingly, we excluded reported sales of [          ] from our analysis using the following programing language:

[

---

[6] *See* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Section C Questionnaire Response," dated March 2, 2022 (Dongsheng Section CQR) at 20.
[7] *Id*. at 23.
[8] *Id*. at 42-43 and Exhibit C-5.
[9] *See* Dongsheng's Letter, "Steel Racks from the People's Republic of China – Supplemental C&D Questionnaire Response," dated May 16, 2022 at 4-5 and Exhibits SQ2-3 and SQ2-4; *see also* "Steel Racks from the People's Republic of China – Fourth Supplemental Questionnaire Response," dated August 22, 2022 at 1-2.

Filed By: Jonathan Hill, Filed Date: 10/14/22 1:51 PM, Submission Status: Approved

Barcode:4300367-01 A-570-088 REV - Admin Review 9/1/20 - 8/31/21

]

### D. Double Remedy Offset

Pursuant to section 777(A)(f) of the Act, and for the reasons explained in the Preliminary Decision Memorandum,[10] we made an adjustment for domestic subsidies using the following programing language:

[

]

## IV.    DIFFERENTIAL PRICING

In order to determine whether Dongsheng made sales of subject merchandise at less than NV, we compared net  prices of sales of subject merchandise to NV using a differential pricing analysis.

The results of the differential pricing analysis are as follows:

| VALUE OF PASSING SALES ============ | VALUE OF ALL SALES ========= | PERCENT OF SALES PASSING BY VALUE ============ |
|---|---|---|
| [          ] | [          ] | 69.1% |

The weighted-average dumping margins calculated using the three methodologies indicated below are listed in the table:

| AD VALOREM WEIGHTED AVERAGE MARGIN RATE (PERCENT) STANDARD METHOD ================ | AD VALOREM WEIGHTED AVERAGE MARGIN RATE (PERCENT) MIXED ALTERNATIVE METHOD ================ | AD VALOREM WEIGHTED AVERAGE MARGIN RATE (PERCENT) A-to-T ALTERNATIVE METHOD ================ |
|---|---|---|
| 39.16 | 40.59 | 40.90 |

These results confirm the existence of a pattern of prices for comparable merchandise that differ significantly among purchasers, regions, or time periods.  However, there is not a meaningful

---

[10] *See* Memorandum, "Decision Memorandum for the Preliminary Results of the Antidumping Duty Administrative Review of Certain Steel Racks and Parts Thereof from the People's Republic of China and Preliminary Determination of No Shipments; 2020-2021" dated concurrently with this memorandum; *see also* Memorandum, "2020-2021 Administrative Review of Certain Steel Racks and Parts Thereof from the People's Republic of China: Domestic Subsidy Adjustment Analysis Memorandum," dated concurrently with this memorandum.

Filed By: Jonathan Hill, Filed Date: 10/14/22 1:51 PM, Submission Status: Approved

difference (*e.g.*, the relative change in the dumping margin is not greater than or equal to 25%) between the weighted-average dumping margin calculated by applying the standard comparison method (*i.e.,* the average-to-average (A-to-A) comparison method) to all U.S. sales and the weighted-average dumping margin calculated by applying the average-to-transaction (A-to-T) alternative comparison method to all U.S. sales. Thus, we used the A-to-A comparison method to calculate Dongsheng's weighted-average dumping margin.

## **List of Attachments**

Barcode:4300367-01 A-570-088 REV - Admin Review 9/1/20 - 8/31/21

I.    **SAS Dumping Margin Program, Log, and Output**
II.   **Exchange Rates and Common Macros**
III.  **SV Summary**

Filed By: Jonathan Hill, Filed Date: 10/14/22 1:51 PM, Submission Status: Approved

Barcode:4300367-01 A-570-088 REV - Admin Review 9/1/20 - 8/31/21

**Attachment I**

SAS Dumping Margin Program, Log, and Output

(*Business Proprietary Information–not subject to public summary*)