IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:      THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | | |
|---|---|---|
| NANJING DONGSHENG SHELF MANUFACTURING CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Ct. No. 24-0085 |
| UNITED STATES, | ) ) | PUBLIC DOCUMENT |
| Defendant, | ) ) | |
| and | ) ) | |
| COALITION FOR FAIR RACK IMPORTS, | ) ) | |
| Defendant-Intervenor. | ) ) | |

**DEFENDANT'S COMMENTS IN SUPPORT OF THE REMAND RESULTS**

Defendant, United States, hereby files comments in support of the remand results (February 23, 2026), ECF 44-1.  These comments are in reply to the comments submitted by plaintiff, Nanjing Dongsheng Shelf Manufacturing Co., Ltd (Dongsheng).  Dongsheng's Remand Comments (March 23, 2026), ECF 45 (Dongsheng Comments).  We respectfully request that the Court sustain the remand results because they comply with the Court's remand order and because they are supported by substantial evidence and otherwise in accordance with law.

**BACKGROUND**

**I.      Final Results**

In the final results of the administrative review of the antidumping duty order covering certain steel racks and parts thereof from the People's Republic of China, the Department of Commerce determined to deny Dongsheng's separate rate certification (SRC), did not select Dongsheng as a mandatory respondent, and treated Dongsheng as part of the China-wide entity.

*See Certain Steel Racks and Parts Thereof from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022,* 89 Fed. Reg. 25,235 (Dep't of Commerce Apr. 10, 2024) (final results)*,* and accompanying Issues and Decision Memorandum (IDM) at 19-30.  Specifically, Commerce determined that Dongsheng failed to request an extension of time to submit its untimely separate rate certification, and that Dongsheng did not demonstrate that any "extraordinary circumstances" prevented it from timely filing its separate rate certification.  IDM at 24.

In the final results, Commerce calculated dumping margins of 11.44 percent and 26.90 percent for the mandatory respondents Jiangsu Nova Intelligent Logistics Equipment Co., Ltd. and the collapsed entity Ningbo Xinguang Rack Co., Ltd. /Ningbo Jiabo Rack Co., Ltd. / Ningbo Lede Hardware Co., Ltd (Xinguang Rack), respectively.  *Final Results*, 89 Fed. Reg. at 25,236.  Commerce assigned a separate rate of 12.73 percent to two non-individually examined companies to which it granted separate rates. Commerce also found that two companies made no shipments of subject merchandise during the period of review.  *Id.*  Furthermore, Commerce denied Dongsheng a separate rate and treated it as part of the China-wide entity.  *Id.*

## II.     The Court's Remand Order

In its order dated June 16, 2025, this Court found that Commerce's decision not to consider Dongsheng as a mandatory respondent because it untimely filed its separate rate certification (SRC) was not in accordance with law.  *Nanjing Dongsheng Shelf Manufacturing Co., Ltd., v. United States,* Slip. Op 25-36, 781 F. Supp. 3d 1374 (Ct. Int'l Trade 2025), ECF No. 38 (Remand Order).  The Court noted that where it is not practicable to make individual weighted-average dumping margin determinations because of the large number of exporters or producers involved in a review, the statute provides that Commerce may determine weighted-

average dumping margins for a reasonable number of exporters or producers by limiting its examination to, among other things, exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined. *Remand Order*, 781 F. Supp. 3d at 1379.  The Court observed that record information indicates that Dongsheng was the largest exporter of subject merchandise during the period of review.  *Id.* at 1380.  The Court concluded that "Commerce cannot impose a regulatory limitation {(regulations setting forth filing deadlines)} on the selection of mandatory respondents that produces a result inconsistent with the express requirements of the statute."  *Id.* at 1379.  Moreover, the Court noted that Dongsheng filed its SRC only a week late and at the same time that other respondents who received filing extensions filed their separate rate applications (SRA) or SRCs.  *Id.* at 1380.  Finally, the Court found that Commerce deviated from the statutory language when selecting mandatory respondents because it based respondent selection on the value, rather than the volume, of subject merchandise shipments during the period of review.  *Id.* (citing 19 U.S.C. § 1677f-1(c)(2)).  Therefore, the Court remanded to Commerce to "reconsider the selection of mandatory respondents in accordance with {its} Opinion."  *Id.*

## III.   Commerce's Remand Results

In the remand redetermination, Commerce accepted Dongsheng's SRC and treated Dongsheng as a mandatory respondent.  *See* Rem. Results at 3-4.  Commerce calculated an estimated weighted-average dumping margin for the company of 25.00 percent.  *Id*. at 1.

Commerce also denied Dongsheng's request for a by-product offset.  Commerce explained that its practice is to grant by-product offsets to the cost buildup of normal value for by-products that are ". . . either sold or reintroduced into production during the {period of review (POR)}, up to the amount of that by-product/ co product actually produced during the {POR}."

*See* Rem. Results at 24-25 (quoting Antidumping Questionnaire at D-9 (P.R.R. 1).  As such, to grant the offset, Commerce typically requires information on the quantity of scrap by-product generated while producing the merchandise under consideration during the period of review.  In certain situations, where the respondent's accounting system does not track the scrap offset, Commerce may allow the offset if the respondent tracks quantities of scrap sold and *if* that respondent can show a "reasonable link between the quantities of scrap sold and scrap generated."  *See* Rem. Results at 25 (quoting *Certain Steel Nails from the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 7,363 (Dep't of Commerce Feb. 2, 2024), and accompanying IDM at 23-24 (citing *e.g.*, *Finished Carbon Steel Flanges from Spain: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 7,919 (February 12, 2020), and accompanying IDM at Comment 1).

Commerce requested Dongsheng provide records to show production of each by-product during one month of the period of revie and evidence of the receipt of payment for the sale "of the item for the largest month of sales for each by product."  Antidumping Questionnaire at D-9-D-10; *see also* Supplemental Questionnaire (P.R.R. 43; C.R.R. 42).  In the response, Dongsheng stated that they have no "production, inventory, or accounting record" tracking the quantity of steel scrap generated.  *See* Dongsheng Section D Supplemental Response at 3-4 (P.R.R. 29; C.R.R. 28).  Dongsheng also stated that it does not weigh or record the weight of steel scrap it generates and only weighs the scrap it generates when sold.  *Id.*  Thus, Dongsheng based its scrap offset on quantity of scrap that it sold during the period of review, claiming that quantity sold is close to the quantity of steel scrap due to the sale of scrap being periodic and not reintroduced into production.  *See* Rem. Results at 26.

Therefore, Commerce found that there was insufficient record evidence to grant Dongsheng a scrap offset. *Id.* Commerce relied on the fact that Dongsheng provided no evidence of quantity of steel scrap generated and did not demonstrate the quantity of steel scrap sold during the period of review is less than quantity of scrap generated. *Id.*

On February 9, 2026, Commerce issued a draft remand redetermination and provided interested parties with an opportunity to comment. *See* Draft Remand Results (P.R.R. 44). Only the petitioner submitted comments. *See* Coalition for Fair Rack Importers Draft Remand Comments (P.R.R. 48; C.R.R. 50). Dongsheng did not submit any comments on the draft remand redetermination.

## ARGUMENT

### I.    Standard of Review

In remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and is "supported by substantial evidence and otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II.    Commerce Complied With The Remand Order

This Court directed Commerce to reconsider its selection of mandatory respondents. *See Remand Order*, 781 F. Supp. 3d at 1380. In compliance with the order, Commerce accepted Dongsheng's SRC and individually reviewed Dongsheng's submitted information. Remand Results at 5. No party challenges Commerce's compliance with the remand order. Accordingly, the Court should sustain the remand redetermination and enter judgment for the United States. As we explain below, the Court should decline to entertain Dongsheng's challenge to Commerce's treatment of its scrap offset, because it failed to exhaust its administrative remedies.

**III.    Dongsheng Did Not Preserve Its Challenge To Commerce's Treatment Of Scrap Offset, Which Is, in Any Event, Supported by Substantial Evidence and in Accordance with Law**

After not submitting comments on Commerce's draft remand results, Dongsheng now challenges Commerce's denial of the scrap offset in its remand results.  Specifically, Dongsheng claims that Commerce's concern that quantity of steel scrap sold during the period of review may exceed the scrap generated is incorrect, that its periodic selling of scrap means that quantity of scrap sold "is essentially the same" as quantity generated, and that Commerce's past granting of this offset makes this denial arbitrary.  Dongsheng Comments at 1-2.

By failing to comment on the draft remand, Dongsheng has failed to exhaust its administrative remedies.  "A party that fails 'to raise the issue at the appropriate time on remand' abandons its argument 'by failing to exhaust its administrative remedies before Commerce.'" *Trina Solar Vietnam Sci. & Tech. Co. v. United States*, Slip op. 26-29, 2026 Ct. Intl. Trade LEXIS 38, *6 (Mar. 17, 2026) (citing *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383 (Fed. Cir. 2008)).  Dongsheng did not comment on the scrap offset issue following the draft remand and, indeed, did not comment on any issue at all.

Congress has mandated that the Court of International Trade "{s}hall, where appropriate, require the exhaustion of administrative remedies" in civil actions arising from Commerce's antidumping duty determinations.  28 U.S.C. § 2637(d).  The statute reflects "a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States Steel Corp.*, 502 F.3d 1370, 1379 (Fed. Cir. 2007).  Exhaustion is "a requirement explicitly imposed by the agency as a prerequisite for judicial review." *Id.* at 1379.  This Court "generally takes a strict view of the requirement that parties exhaust their administrative remedies before {Commerce} in

trade cases." *Id.* Parties must raise issues with specificity and "at the time appropriate under {an agency's} practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36-37 (1952).

There are limited exceptions to the requirement of administrative exhaustion; none of them apply here. Whether Dongsheng has demonstrated its entitlement to a scrap offset is not a "pure question of law." *Corus Staal*, 502 F.3d at 1378, fn. 4; *see Mittal Steel*, 548 F.3d at 1384-85. To the contrary, the issue is one that falls within the special expertise of the agency and requires development of a factual record. *See Consol. Bearings Co. v. United States*, 358 F.3d 997, 1003 (Fed. Cir. 2003). Nor would it have been futile to raise this argument before Commerce. To fall under the "narrow" futility exception, a party must show that they "would be required to go through obviously useless motions in order to preserve their rights." *Corus Staal*, 502 F.3d at 1379 (internal quotation omitted). Here, Dongsheng cannot make that showing, particularly when it offered *no* comments to Commerce at all on the draft remand. Because Dongsheng failed to exhaust its arguments, this Court should decline to consider them. *See Nan Ya Plastics Corp., Ltd. v. United States*, 810 F. 3d 1333, 1350 (Fed. Cir. 2016).

Even if this Court were to excuse Dongsheng's failure to exhaust its administrative remedies, Dongsheng's arguments fail on the merits. Dongsheng claims that while it only weighs and records the weight of steel scrap at the time of sale, it claimed the offset amount of steel scrap "based on the total quantity of steel scrap sold during the POR," and multiplied the standard weight of steel for each CONNUM by a ratio created by allocating total steel scrap sold to self-produced products based on standard steel weight. Dongsheng Comments at 1. This proposed calculation does not usurp the requirement to show that quantity of steel scrap sold does not exceed scrap generated during the period of review. In past cases, Commerce has found it reasonable to grant an offset based on quantity sold where the respondent can show quantity of

7

scrap is less than quantity that could have been generated during the period of review. *See* Remand Results at 25.

Further, Dongsheng claims that because it periodically sold scrap generated, the quantity of scrap sold is "essentially the same" as the quantity of scrap generated. Dongsheng Comments at 2. This is not the standard. "Essentially the same" does not demonstrate that scrap which is sold is less than scrap which was generated. Just because this periodic reporting may be more frequent than the period of review does not mean all scrap sold can be shown to have been generated during the period of review. *See Am. Tubular Products, LLC, v. United States,* 847 F.3d 1354, 1361-62 (Fed. Cir. 2017) (finding that a party is not entitled to a scrap offset absent showing that scrap was in fact produced during the period of review). This is the exact issue Commerce seeks to address by requesting evidence that quantity sold is not more than quantity generated within the period of review.

Finally, Dongsheng points to Commerce's treatment of Dongsheng in past proceedings, attaching a memo and the draft remand results as support for its claim that Commerce's decision is arbitrary. Dongsheng Comment at 2. The documents Dongsheng attaches are not part of the administrative record and therefore are not before this Court for consideration. *See* 19 U.S.C. § 1516a(b)(2); s*ee also* 19 C.F.R. § 351.104(a)(6) (outlining "public versions of certain unpublished documents originating with the Department which may always be referenced by citation without placing the information on the record.").[1]

---

[1] The Analysis Memorandum is not the kind of document which can be cited to without being placed on the record. *See also Regulations Enhancing the Administration of the Antidumping and Countervailing Duty Trade Remedy Laws,* 89 Fed. Reg. 101,694, 101,697 (Dept. of Commerce Dec. 16, 2024). Calculation memoranda are highly dependent on record-specific facts, and were specifically excluded from the categories of documents that can be cited without being placed on the record. *Id.* at 101,696.

Dongsheng's argument that Commerce's decision was arbitrary is unpersuasive. Commerce clearly stated its reasoning for denying the scrap offset.  *See* Remand Results at 24-26.  This decision came after *twice* requesting necessary information from Dongsheng to evaluate their scrap-offset.  *See* Antidumping Questionnaire at D-9 to D-10; *see also* Section D Questionnaire at 2 (C.R.R. 27). Commerce explained its reasoning and that its decision was consistent with its practice.  *See* Remand Results at 26.

<strong><u>CONCLUSION</u></strong>

For these reasons, we respectfully request that this Court sustain the remand results and enter judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

| | |
|---|---|
| | <u>s/Tara K. Hogan</u> |
| OF COUNSEL: | TARA K. HOGAN |
| SAMUEL E. CHILDERSON | Assistant Director |
| Attorney | U.S. Department of Justice |
| Department of Commerce | Civil Division |
| Office of Chief Counsel for Trade | Commercial Litigation Branch |
| Enforcement & Compliance | P.O. Box 480, Ben Franklin Station |
| 1401 Constitution Avenue, NW | Washington, D.C., 20044 |
| Washington, D.C., 20230 | Tele: (202) 616-2228 |
| | Email: Tara.Hogan@usdoj.gov |
| April 20, 2026 | Attorneys for Defendant |

**CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this document contains **2,429** words, and therefore complies with the word limitation set forth in ¶ 2(B)(1)(b).

/s/Tara K. Hogan